IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA f/u/b/o MCCORVEY SHEET METAL WORKS, L.P., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2789 |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, *et al.*, | * | |
| | * | |
| Third-Party Plaintiffs, | * | |
| v. | * | |
| | * | |
| KDB Mechanical LLC f/k/a KIRLIN DESIGN BUILD, LLC, | * | |
| Third-Party Defendant. | * | |

## MEMORANDUM OPINION

In this Miller Act construction dispute, the defendants—Travelers Casualty and Surety Company of America, Federal Insurance Company, Federal and Deposit Company of Maryland, Zurich American Insurance Company and Travelers Casualty and Surety Company ("defendants" or "sureties")—have moved to strike the demand for a trial by jury brought by the plaintiff, the United States f/u/b/o McCorvey Sheet Metal Works, L.P. ("McCorvey"). ECF 13. The matter is fully briefed. ECF 13-1, 28, 30. No hearing is necessary. Loc. R. 105.6. For the reasons below, the Court grants the defendants' motion to strike.

**I.     Background**

In 2016, the United States contracted with Clark Construction ("Clark") for the design and construction of a building at Ft. Meade in Maryland. ECF 43, ¶ 13.[1] The Miller Act, 41 U.S.C. § 3131 *et. seq.*, requires Clark, as the prime contractor on a federal project of this scale, to execute a payment bond to the United States to guarantee that the subcontractors and suppliers will get paid. *Id.* ¶¶ 8, 9. To that end, Clark and the defendants executed a payment bond for $616,311,000, with Clark as the principal and the defendants as sureties. *Id.* ¶ 8.

Later that year, Clark executed a first-tier subcontract with Kirlin Design Build, LLC ("Kirlin") for the design and construction of the project's HVAC, ductwork, piping, and plumbing, among other things. *Id.* ¶ 15. On January 1, 2018, Kirlin executed a second-tier subcontract with McCorvey for the fabrication and installation of the mechanical ductwork. *Id.* ¶ 16.[2] Their second-tier subcontract contains this clause: "DUE TO THE SPECIALIZED NATURE OF CONSTRUCTION LITIGATION, EACH PARTY WAIVES ITS RIGHT TO A TRIAL BY JURY, INCLUDING ANY SUIT AGAINST KIRLIN'S PAYMENT BOND SURETY OR GC'S PAYMENT BOND SURETY." ECF 1-2, art. 19.

In April 2018, McCorvey began its work. ECF 43, ¶ 21. After several years of work on the project, McCorvey filed this Miller Act suit against the defendants, seeking compensation for a variety of increased costs for which McCorvey has not been paid. *Id.* ¶ 36. McCorvey has

---

[1] The relevant background allegations are found in the amended complaint, ECF 43, which was filed after the defendants' motion to strike the demand for trial by jury in the initial complaint, ECF 1. The jury demand appears in both pleadings. The Court construes the motion to strike as to the most recent pleading.

[2] McCorvey reports that it made the agreement with Kirlin Design Build, LLC. ECF 43, ¶ 15. That is also the name on the subcontract agreement initially submitted to the Court. ECF 1-2, at 1. However, the defendants report that the contract was signed by Kirlin Mid-Atlantic, LLC and then assigned to Kirlin Design Build, LLC. Nothing in this opinion turns on the issue.

demanded a trial by jury. The defendants moved to strike the jury demand on the ground that McCorvey waived its right to a trial by jury in its second-tier subcontract with Kirlin. ECF 13. McCorvey has opposed the motion, ECF 28, and the defendants have replied, ECF 30.

## II. Discussion

The Seventh Amendment guarantees the right to a trial by jury for a legal claim in a civil action. U.S. Const. amend. VII. Rule 38(a) "preserve[s]" that right "to the parties inviolate." Fed. R. Civ. P. 38(a). For that reason, "[o]n any issue triable of right by a jury, a party may demand a jury trial." *Id*. However, that right can be waived by contract. *See Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986). If the right has been waived, then a party may move to strike a jury demand on the ground that "there is no federal right to a jury trial." *See* Fed. R. Civ. P. 39(a)(2); *Mowbray v. Zumot*, 536 F. Supp. 2d 617, 621 (D. Md. 2008). The movant must establish that the other party waived this right knowingly and voluntarily. *See Leasing Serv. Corp.*, 804 F.2d at 833. To determine whether a waiver is knowing and voluntary, the court considers the waiver's clarity and conspicuousness, as well as the parties' relative bargaining power. *See Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 530 (D. Md. 2011). Because "the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

### A. Knowing and voluntary waiver

The waiver was knowing and voluntary. McCorvey, a self-professed leader in the construction contracting field, ECF 43, ¶ 1, and Kirlin, another construction contracting firm, enjoyed comparable bargaining power when they executed the second-tier sub-contract. In the contract, the waiver conspicuously appears as the only provision in all capital letters. ECF 1-2, art. 19. And finally, the waiver is clear. The single sentence declares that "EACH PARTY

WAIVES ITS RIGHT TO A TRIAL BY JURY" in "ANY SUIT AGAINST KIRLIN'S PAYMENT BOND SURETY OR GC'S PAYMENT BOND SURETY." ECF 1-2, art. 19. Moreover, McCorvey does not contest that it knowingly and voluntarily agreed to the jury waiver provision. The defendants have established that McCorvey agreed to the waiver knowingly and voluntarily.

### B. Scope of waiver

McCorvey denies that the waiver encompasses this case. On McCorvey's account, the waiver governs litigation only between the two parties to the agreement: McCorvey and Kirlin. ECF 28, at 4–5. If that were correct, then this dispute between McCorvey and the sureties would be outside the waiver's scope, and the Court would deny the motion.

However, the text of the waiver does not sustain McCorvey's interpretation. By its terms, "EACH PARTY WAIVES ITS RIGHT TO A TRIAL BY JURY" in "ANY SUIT AGAINST . . . GC'S PAYMENT BOND SURETY." ECF 1-2, art. 19. This is one such case: McCorvey, a party, brought this suit against the payment bond sureties of Clark, the general contractor. McCorvey counters that "[t]here is no language in the 'jury waiver' provision stating that it applies to any litigation where Kirlin and McCorvey are not direct adverse litigants." ECF 28, at 5. That is true. But there is no language limiting the waiver to litigation between those two parties either. The language there is extends the waiver to "any suit" by one of the parties against a surety of the general contractor. No other language imposes the limits McCorvey describes. This case is clearly within the scope of the waiver.

### C. Standing to exercise the waiver

Perhaps recognizing the scope of the jury waiver includes this case, McCorvey focuses its arguments on the sureties' standing to enforce the waiver. In McCorvey's view, the sureties may

4

not enforce the waiver provision because they are not parties to the agreement that contains the waiver.

McCorvey's argument rests on a basic premise of contract law: "Absent some recognized exception," only the parties to a contract may exercise the rights it creates. *See Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983) (citing 2 *Williston on Contracts* §§ 273, 347, at 178–80, 793 (3d ed. 1959 & 1983 Supp.)). The sureties were not parties to the contract between McCorvey and Kirlin, and as a result, they have the right to invoke the jury waiver only if an exception applies.

Two exceptions bear examination. First, a surety may exercise the principal's defenses to liability. *See Painting Co. v. Walsh/DeMaria Joint Venture III*, No. 2:09-CV-183, 2010 WL 1027424, at *1 (S.D. Ohio Mar. 12, 2010). Second, an intended third-party beneficiary may exercise a contractual right or defense provided for their benefit. *See Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164–66 (9th Cir. 1996) (recognizing that defendants may invoke choice-of-law and jury waiver provisions in a contract to which they were not parties if they were third-party beneficiaries); *CASA de Md., Inc. v. Arbor Realty Trust, Inc.*, No. DKC-21-1778, 2022 WL 4080320, at *23 (D. Md. Sept. 6, 2022) (citing Restatement (Second) of Contracts § 302 (Am. L. Inst. 1981)). Whether state law or federal common law governs the applicability of these exceptions in a Miller Act case is neither clear nor an issue that the Court must decide.[3] As to the surety exception, the answer proves irrelevant, because (as explained below) the Court does not

---

[3] *Compare* 148 Am. Jur. Trials 1 *Litigation of Claims Under Miller Act* § 23 (2017) ("State law is also applied to resolve ordinary contract issues."), *with United States ex. rel. Nova Enters., Inc. v. Reliance Ins. Co.*, No. 92–1374, 1992 WL 296346, at *1–2 (4th Cir. Oct. 16, 1992) ("Although Nova contends that state law should govern our interpretation of [the waiver in a contract], the Miller Act 'provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law.'") (quoting *F.D. Rich Co. v. Indus. Lumber Co.*, 417 U.S. 116, 127 (1974)).

decide the case on that ground. As to the third-party beneficiary exception, Maryland law and federal common law both direct the Court to the Restatement (Second) of Contracts. *See CASA de Md., Inc.*, 2022 WL 4080320 at *23 ("Maryland follows the Restatement (Second) of Contracts"); *United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 451 (4th Cir. 2011) ("When applying federal common law to contract issues, courts generally look to the Restatement for guidance."). Whichever law applies, the substance is the same.

In briefing, the parties focus on the surety exception. ECF 28, at 3–4; ECF 30, at 3–5. It is an open question whether a surety may invoke the principal's right to enforce a jury waiver in the principal's contract with a claimant on the bond. *See Attard Indus. v. United States Fire Ins. Co.*, No. 1:10-cv-121, 2010 WL 3069799, at *2 (E.D. Va. Aug 5, 2010). Some courts have accepted the argument that the surety may invoke the principal's right to enforce the waiver. *See Painting Co.*, 2010 WL 1027424 at *1–*2; *United States ex rel. Anderson Excavating Co. v. KiewitPhelps*, No. 8:19-cv-303, 2020 WL 2395220, at *2 (D. Neb. May 11, 2020). Others have rejected it. *See Attard Indus.*, 2010 WL 3069799 at *4; *United States ex rel. Charles T. Driscoll Masonry Restoration, Co. v. Travelers Cas. & Sur. Co.*, No. 5:17-cv-453, 2017 WL 3701218, at *8 (N.D.N.Y. Aug. 25, 2017); *United States ex rel. Collins Plumbing, Inc. v. Turner-Penick Joint Venture*, No. 11-cv-2834, 2013 WL 5462278, at *9 (S.D. Cal. Sept. 30, 2013); *United States f/b/o Doten's Constr. v. JMG Excavating & Constr.*, No. 03–134–P–S, 2005 WL 1412445, at *4 (D. Me. May 24, 2005).

McCorvey argues that the weight of these authorities indicates that the sureties may not invoke the jury waiver. ECF 28, at 3–4. As three of the four courts that reached this conclusion reason, although a surety may assert any defenses to liability available to the principal, "the justification for a surety to 'stand in the shoes' of its principal diminishes when the principal's

right to be enforced is not related to the principal's liability to the claimant, but to the process or procedure relating to the adjudication of that liability." *See Attard Indus.*, 2010 WL 3069799 at *4; *Driscoll Masonry Restoration, Co.*, 2017 WL 3701218 at *8 (quoting *Attard Indus.*, 2010 WL 3069799 at *4); *Collins Plumbing, Inc.*, 2013 WL 5462278 at *9 (same). The defendants respond that these cases are neither binding nor persuasive. ECF 30, at 3. They also distinguish them. Whereas the waivers in those cases did not mention the sureties at all, the waiver in this case expressly extends to suits against the sureties. ECF 30, at 3–5.

These cases turn on distinguishable facts. Two of the four courts denied motions to strike a jury demand on the ground that the strong presumption against enforcing a jury waiver cannot be overcome when there is reasonable doubt about whether the waivers encompass the sureties' claims. *See Attard Indus.*, 2010 WL 3069799 at *4; *Driscoll Masonry Restoration, Co.*, 2017 WL 3701218 at *8. But the jury waivers in those cases were unclear in ways that the jury waiver in this case is not. Those courts were concerned that the waivers before them did not expressly cover suits against a non-party to the contract. *See Attard Indus.*, 2010 WL 3069799 at *4; *Driscoll Masonry Restoration, Co.*, 2017 WL 3701218 at *8. This waiver does—mentioning the non-party sureties by their Miller Act roles. Those courts also were concerned that the waivers before them did not contemplate suits on a bond. *See Attard Indus.*, 2010 WL 3069799 at *4; *Driscoll Masonry Restoration, Co.*, 2017 WL 3701218 at *8. By expressly including suits against "PAYMENT BOND SURET[IES]," ECF 1-2, art. 19, this waiver does. The waivers in the other two cases were expressly limited to suits one party initiated against the other. *See Doten's Constr.*, 2005 WL 1412445 at *3; *Collins Plumbing, Inc.*, 2013 WL 5462278 at *3. The waiver in the case at hand covers "ANY SUIT" against the sureties. ECF 1-2, art. 19.

Nevertheless, in light of its duty to "indulge every reasonable presumption against waiver," *Aetna Ins. Co.*, 301 U.S. at 393, this Court declines to hold that the defendants may invoke the jury waiver as sureties stepping into the shoes of their principal. Here is why. The sureties' principal is the general contractor, Clark, which was not a party to the second-tier subcontract between McCorvey and Kirlin. Even if a surety may exercise its principal's right to invoke a jury waiver, it would not follow that Clark's sureties may enforce a jury waiver in an agreement between McCorvey and Kirlin. To invoke the jury waiver here by virtue of their status as sureties, the defendants would not only have to show that a surety can, as a matter of law, invoke the principal's right to enforce a jury waiver. They also would have to show that as a matter of fact, Clark has a right of its own to enforce a jury waiver in a contract to which it was not a party. The facts here distinguish this case from the other cases in which sureties sought to invoke jury waivers in contracts signed by their principals. In consequence, the Court need not, and does not, decide whether a surety may invoke a jury waiver in the place of its principal.

By contrast, the third-party beneficiary exception matters. An intended third-party beneficiary of a jury waiver has the right to enforce it. *See Paracor Fin.*, 96 F.3d at 1164–66. The remaining question, then, is whether the defendants are intended third-party beneficiaries of the jury waiver provision in the contract between McCorvey and Kirlin. To answer this question, the Court looks to the Restatement (Second) of Contracts. *See CASA de Md., Inc.*, 2022 WL 4080320 at *23; *United States ex rel. Ubl*, 650 F.3d at 451. The Restatement provides:

> (1) [U]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> 	(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> 	(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302.

*Coastal Masonry*, the only Miller Act case finding that a surety has the right to enforce a waiver as a third-party beneficiary, illustrates how to apply the Restatement here. *See Coastal Masonry, Inc. v. Reliance Ins. Co.*, 297 B.R. 34 (E.D. Va. 2003). The contract between a subcontractor, Coastal Masonry, and a contractor, SEEMA, included this waiver:

> The Subcontractor agrees that all other claims not included in subparagraphs (a) (b) above shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division. The parties hereto expressly consent to the jurisdiction and venue of said Courts. *This remedy shall be the Subcontractor's sole and exclusive remedy in lieu of any claim against SEEMA's bonding company pursuant to the Miller Act, 40 U.S.C. 270 or any other procedure or law, regardless of the outcome of the claim.*

*Coastal Masonry*, 297 B.R. at 37–38 (emphasis in original). When the subcontractor brought a Miller Act claim against the general contractor's surety, the court held that the surety was an intended third-party beneficiary with the right to enforce the waiver. *See id*. at 38. To the court, the provision at issue was "a clear waiver of the right to assert a claim against the bonding company under the Miller Act." *Id*. Echoing the Restatement, the court reasoned that the surety was a third-party beneficiary of the waiver because the intent of the parties in adopting the waiver was to prevent the subcontractor from bringing certain specified claims against the surety in certain fora, and the only way to effectuate that intent was to recognize the surety's right to enforce it. *See id*.[4]

Persuaded by that approach, the Court finds that the sureties are intended third-party beneficiaries of the jury waiver. The provision clearly "WAIVES" McCorvey's and Kirlin's "RIGHT TO A TRIAL BY JURY" in "ANY SUIT AGAINST . . . GC's PAYMENT BOND SURETY." ECF 1-2, art. 19. Just as the *Coastal Masonry* Court inferred from a clear waiver of

---

[4] As *Coastal Masonry* notes, Congress has since revised the Miller Act to render this sort of waiver unenforceable on substantive grounds. *Id*. at 38–39. But the court's analysis of the contractual provision remains sound and persuasive.

9

a right against the general contractor's surety that the parties intended to protect the surety from the later exercise of that right in litigation, 297 B.R. at 38, so does this Court infer from the parties' clear waiver of the right to demand a jury trial in any action against the general contractor's surety that they intended to prevent McCorvey or Kirlin from demanding a jury trial in a Miller Act case against Clark's sureties.  As in *Coastal Masonry*, not only is recognizing the defendants' right to enforce the jury waiver "appropriate" to effectuating that intent in this case, Restatement (Second) of Contracts § 302(1), it is "the only way" to effectuate that intent.  *Coastal Masonry*, 297 B.R. at 38.  And the circumstances indicate that McCorvey and Kirlin (who are reciprocal promisees) intended to give the sureties this benefit.  *See* Restatement (Second) of Contracts § 302(1)(b).  They specifically agreed to waive a jury trial in any suit against the "GC's PAYMENT BOND SURET[IES]." ECF 1-2, art. 19.  By identifying the beneficiaries of the jury waiver by their Miller Act roles—Clark's payment bond sureties—McCorvey and Kirlin confirmed their intent to make the defendants beneficiaries of the provision.

      Resisting this result, McCorvey argues another provision within the "Disputes" Article 19, the stay clause, establishes the sureties are not intended third-party beneficiaries of the jury waiver.  In the stay clause, McCorvey agreed to stay "any cause of action which it may have against Kirlin and its surety on a payment bond, or against the GC and its surety on a payment bond" until it has exhausted certain alternative means of dispute resolution.  ECF 1-2, art. 19.  The text of the stay provision expressly states that it is "for the benefit of Kirlin's surety or the GC's surety, regardless of whether Kirlin or the GC is made parties to the payment bond action." *Id*.  McCorvey claims that the parties "purposely . . . omitted" a comparable clause from the jury waiver, so "reading the 'Disputes' Article 19 as a harmonious whole, the only consistent reasonable interpretation is that McCorvey and Kirlin did not intend that the 'jury waiver' was for the benefit of the GC's surety,

*i.e.*, the Defendant Miller Act Sureties, unless McCorvey and Kirlin were adverse parties in litigation." ECF 28, at 5.

To be clear, McCorvey's argument is not that the inclusion of a "for the benefit" clause in the stay provision and the omission of a comparable clause in the jury waiver implies that the waiver was not included for the benefit of the sureties. McCorvey concedes that the jury waiver *is* for their benefit, albeit only when McCorvey and Kirlin are adverse parties. *See id*. Instead, McCorvey's argument is that because the parties expressly extended the stay provision and its benefits to cases McCorvey might bring against Kirlin's or Clark's sureties, even when McCorvey declined to sue their principals, the parties did not extend the jury waiver and its benefits to cases McCorvey might bring against the sureties unless McCorvey also sued Kirlin. *See id*.

The contract language suggests a simpler explanation. By its terms, the stay provision covers "any cause of action which [McCorvey] may have against Kirlin *and* its surety on a payment bond, or against the GC *and* its surety on a payment bond." ECF 1-2, art. 19 (emphasis added). Without more, one might think that the clause (and its benefits) extended only to actions brought against *both* Kirlin *and* its surety or against *both* Clark *and* its surety. But by adding "regardless of whether Kirlin or the GC is made parties to the payment bond action," the parties prevented that misunderstanding—clarifying that the stay provision applies even if McCorvey brings a payment bond action against a surety but not its principal. So reading the stay provision and the jury waiver "as a harmonious whole," ECF 28, at 5, requires reading the jury waiver as having that same scope. The Court cannot reasonably infer from the stay provision an otherwise invisible restriction on the scope of the jury waiver.

### D. The Miller Act right to a civil action

As a final challenge to the jury waiver, McCorvey argues it is unenforceable under the Miller Act because the statute prohibits a subcontractor from waiving its statutory right to bring a civil action before furnishing labor and materials for a covered government construction project, and as McCorvey argues, this right to bring a civil action includes a right to trial by jury. McCorvey is correct that the Miller Act guarantees it, a second-tier subcontractor, who has "furnished labor or material" on an applicable project, the right to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and [to] prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133 (b)(1). And the Act does bar waiving that right up front. 40 U.S.C. § 3133(c).

But the Miller Act right to a civil action does not include a right to a trial by jury. The text of the statute makes no mention of a jury trial. That is particularly striking in light of the fact that the text spells out other features that the statutory right to a civil action does include, like the right to "prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). McCorvey does not cite any authority for its assertion that the Miller Act right to a civil action includes a right to a jury trial. The only court to have decided this question rejected the position McCorvey urges the Court to adopt in this case. *See Painting Co.*, 2010 WL 1027424 at *2. That makes sense. After all, a civil case decided in a bench trial is as much a "civil action" as one decided by a jury.

In support of its position, McCorvey cites cases holding that the Miller Act renders other provisions like "no damages for delay" clauses unenforceable for compromising the statutory right to bring a civil action. ECF 28, at 8–9. But these cases do not show that the right to a civil action includes a right to a jury trial. A "no damages for delay" provision limits one party's right to

12

compensation for expenses incurred from certain delays by the other. *See United States v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 479 (E.D. Va. 2017). Read in the light most charitable to McCorvey, these cases suggest that the Miller Act prevents a surety from invoking an advance waiver of liability. But a jury waiver does not limit the surety's liability. *See Attard Indus.*, 2010 WL 3069799 at *4. It only limits the procedure by which the plaintiff may establish that liability. *See id.* In consequence, even if the Miller Act bars advance "no damages for delay" clauses, it does not follow that the statute bars advance waivers of the right to a trial by jury.

The Miller Act right to a civil action does not include the right to a trial by jury. As a result, the statute does not bar a second-tier subcontractor from waiving its right to a jury trial before beginning performance.

### III.   Conclusion

Even "indulg[ing] every reasonable presumption" against this conclusion, *Aetna Ins. Co.*, 301 U.S. at 393, the Court finds that McCorvey waived its right to a trial by jury knowingly and voluntarily. The waiver clearly encompasses this action, and as intended third-party beneficiaries of the waiver, the defendants have the right to invoke it. The Miller Act is no barrier to its enforcement. The defendants' motion to strike the plaintiff's jury demand is granted. A separate order follows.

Date: September 7, 2023

Deborah L. Boardman
United States District Judge