## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b/o MCCORVEY SHEET METAL WORKS, L.P.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civ. No. DLB-22-2789** |
| | * | |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** *et al.*, | * | |
| | * | |
| **Third-Party Plaintiffs,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **KDB Mechanical LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | * | |
| | * | |
| **Third-Party Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| | * |
| **CLARK CONSTRUCTION GROUP, LLC,** | * |
| | * |
| **Cross-Claimant/Counter Defendant,** | * |
| | * |
| **v.** | * |
| | * |
| **KDB Mechanical LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | * |
| | * |
| **Crossclaim Defendant/Counterclaimant.** | * |

## <u>MEMORANDUM OPINION</u>

After McCorvey Sheet Metal Works, L.P. ("McCorvey") sued Travelers Casualty and Surety Company of America, Federal Insurance Company, Federal and Deposit Company of Maryland, Zurich American Insurance Company, and Travelers Casualty and Surety Company ("the sureties") under the Miller Act, the sureties filed a third-party complaint against Kirlin Design Build, LLC ("Kirlin") for indemnification from McCorvey's claims. ECF 45. Now Kirlin moves to dismiss the sureties' third-party complaint. ECF 47. The matter is fully briefed. ECF 47-1, 57, 59. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court denies Kirlin's motion to dismiss.

## I.     Background

In 2016, the United States contracted with Clark Construction Group, LLC ("Clark") for the design and construction of a building at Ft. Meade in Maryland. ECF 83, ¶ 7. The Miller Act, 41 U.S.C. § 3131 *et. seq.*, required Clark, as the prime contractor on a federal project of this scale, to execute a payment bond to the United States to guarantee that the subcontractors and suppliers would get paid. ECF 43, ¶¶ 8, 9. To that end, Clark executed a payment bond for $616,311,000 with the sureties. *Id*. ¶ 8.

Later that year, Clark executed a first-tier subcontract with Kirlin Mid-Atlantic, LLC for the design and installation of the project's mechanical, plumbing, and fire protection systems. ECF 83, ¶ 8. Kirlin Mid-Atlantic then assigned the subcontract to Kirlin. *Id.* ¶ 9. On January 1, 2018, Kirlin executed a second-tier subcontract with McCorvey for the fabrication and installation of the mechanical ductwork. ECF 43, ¶ 16.

A few years later—with the project running behind schedule and over-budget—McCorvey filed a Miller Act suit against the sureties, seeking compensation for a variety of increased costs

for which McCorvey allegedly has not been paid. *Id.* ¶ 36. In response, the sureties filed a third-party complaint against Kirlin, asserting that Kirlin had agreed to indemnify them against McCorvey's claims. ECF 23 (original) & 45 (amended).

The sureties' contractual indemnification claim against Kirlin begins with the subcontract between Kirlin and Clark. The subcontract provided that Kirlin "shall, as part of each request for partial payment other than the initial request, furnish claim releases and lien waivers with respect to all work performed and materials supplied through the date of the immediately preceding request for partial payment in the form attached hereto." ECF 45, ¶ 21. Throughout the project, Kirlin executed a number of these claim releases, *id.* ¶ 23, including on March 16, 2021, December 1, 2021, and December 14, 2021, *id.* ¶¶ 24–26. In each of these releases, Kirlin agreed

> to indemnify and hold harmless Clark and its sureties, and the [United States] and its lenders and guarantors, from any and all damages, costs, expenses (including attorneys' fees incurred), demands, and suits, directly or indirectly relating to any cause of action, claim or lien filing with respect to any (i) Work performed or which should have been performed in construction of the Project through the Effective Date, (ii) any rights waived or released herein, and (iii) any misrepresentation or breach of any certification, affirmation or warranty made by the undersigned in this Affidavit and Partial Release of Liens/Claims. Upon the request of Clark, its sureties, or the Owner of the Project or its lenders and guarantors, the undersigned will undertake to defend such cause of action, claim or lien filing at its sole cost and expense.

*Id.* ¶ 27. Each release was accompanied by an attachment on which Kirlin listed specific expenses to which it was not waiving or releasing its rights. *See, e.g.*, ECF 45-4, at 8–11.

After McCorvey filed its complaint against the sureties, the sureties sent Kirlin a "Notice of Demand for Indemnification," seeking to confirm that Kirlin would indemnify them and undertake to defend against McCorvey. *Id.* ¶ 29. Four days later, Kirlin refused those requests. *Id.* ¶ 31. That prompted the sureties to file their third-party complaint against Kirlin. ECF 23. Kirlin moved to dismiss the sureties' third-party complaint under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim.  ECF 37.  The sureties announced their intent to file an amended third-party complaint, so the Court found Kirlin's motion to dismiss moot.  ECF 42.  After the sureties filed their amended third-party complaint, ECF 45, Kirlin again moved to dismiss, ECF 47.  The sureties opposed the motion.  ECF 57.  Kirlin replied.  ECF 59.

## II.      Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to include in their complaint a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of that statement.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6).  A court will deny a Rule 12(b)(6) motion if, but only if, the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In ruling on the motion, a court accepts the well-pleaded allegations as true, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), but "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  A complaint that merely recites the elements of the cause of action or couches legal conclusions as facts cannot overcome a Rule 12(b)(6) motion.  *See Twombly*, 550 U.S. at 555; *Turner*, 930 F.3d at 644.  In resolving a Rule 12(b)(6) motion, a court may consider "documents that are explicitly incorporated into the complaint by reference and those

4

attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c).

## III.   Discussion

Kirlin advances three arguments for the dismissal of the sureties' contractual indemnification claim.  None prevails.[1]

### A.   Ripeness

Kirlin first contends that the sureties' claim for contractual indemnification must be dismissed as unripe.  ECF 47, at 9–10.  As Kirlin sees the matter, the sureties cannot seek indemnification until they have actually incurred a liability Kirlin has a duty to cover.  *Id.*  In briefing, the parties conflate three distinct questions: whether the Federal Rules of Civil Procedure permit the sureties to file their complaint now, whether the sureties' claim is ripe in the sense required for Article III standing, and whether the sureties' claim for contractual indemnification has accrued.  Ultimately, none of these issues warrants the dismissal of the third-party complaint.

To begin with, the Federal Rules of Civil Procedure expressly provide for a third-party complaint for indemnification in advance of a judgment of liability.  "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is *or may be* liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1) (emphasis added).  The Fourth Circuit has consistently confirmed that Rule 14(a) authorizes an indemnitee to implead an alleged

---

[1] The sureties argue that pursuant to Fed. R. Civ. P. 12(g)(2), the Court should not consider the merits of Kirlin's motion to dismiss because Kirlin could have raised these arguments in its first motion to dismiss and failed to do so.  *See Smith v. Integral Consulting Servs., Inc.*, No. DKC-14-3094, 2015 WL 4567317, at *1 (D. Md. July 27, 2015).  Kirlin responds that while Rule 12(g)(2) may permit the Court to deny the motion on this ground, the rule does not require the Court to do so.  *See Aviles–Cervantes v. Outside Unlimited, Inc.*, 276 F. Supp. 3d 480, 487–88 (D. Md. 2017).  The Court need not decide whether Rule 12(g)(2) requires or permits courts to deny a motion because the movant could have raised the arguments previously.  Under either interpretation, the Court would deny Kirlin's motion.

indemnitor at the outset of an action for which the third-party defendant would have a duty to indemnify the third-party plaintiff. *See Brogle v. S.C. Elec. & Gas Co.*, 509 F.2d 1216, 1217 n.1 (4th Cir. 1975); *Jennings v. United States*, 374 F.2d 983, 986 n.4 (4th Cir. 1967); *Am. Export Lines, Inc. v. Revel*, 262 F.2d 122, 124–25 (4th Cir. 1958). As a procedural matter, the sureties' third-party complaint for contractual indemnification is not premature.

In addition, the sureties' claim is justiciable in federal court. Under Article III of the U.S. Constitution, "the judicial Power" extends only to cases or controversies. *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing U.S. Const., art. III, § 2, cl. 1). "[A] case or controversy is fit for federal judicial review" only if it is ripe. *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). As Kirlin points out, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated." *Scoggins v. Lee's Crossing Homeowners' Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). For that reason, an independent action for indemnity is typically unripe in advance of a judgment against the party seeking indemnification. *See A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co.*, 559 F.2d 928, 931 (4th Cir. 1977). A court that issues "a decision" in an indemnity action "before any determination of liability [] risk[s] issuing an advisory opinion." *Trustgard*, 942 F.3d at 200. After all, if the indemnitee is not ultimately found liable, a prior indemnity ruling would have no effect. *Id.*

Nevertheless, even as the Fourth Circuit has condemned freestanding actions for indemnification as premature before judgments of liability, the court has recognized that a third-party complaint filed at the outset of the action that will determine liability is timely. *See Mowinckles*, 559 F.2d at 933. In the very case in which the Fourth Circuit first held that an independent action for indemnity was unripe in advance of a liability judgment, the Fourth Circuit

also stressed that two alternative ways of litigating indemnity present justiciable cases: the consolidation of the indemnity action with the liability action pursuant to Rule 42(a) and the impleader of the alleged indemnitor into the liability action pursuant to Rule 14(a).  *Id.*  The sureties have exercised the latter option.  Accordingly, their claim should not be dismissed as unripe.  *See Johnson v. City of Annapolis*, No. CCB-21-1074, 2023 WL 3390823, at *9 n.20 (D. Md. May 11, 2023); *Sher v. Luxury Mortg. Corp.*, No. ELH-11-3656, 2012 WL 5869303, at *13–14 (D. Md. Nov. 19, 2012).

That distinction makes sense.  When a court decides an independent action for indemnity before any judgment of liability, the court answers a hypothetical question:  If the indemnitee is held liable in some other case, is the indemnitor on the hook?  When a court decides the liability action and the indemnity action together, the court makes a concrete, binding determination of who is liable to whom for what.  In that posture, the court need not issue any "decision" on indemnity "before any determination of liability."  *See Trustgard*, 942 F.3d at 200.  Instead, the court answers the indemnity question only if and to the extent that the court finds liability.  And "by drawing into one proceeding all parties who may become ultimately liable," the Rule 14(a) process "save[s] the time and cost of duplicating evidence," "obtain[s] consistent results," and "avoid[s] . . . a time lag between a judgment against the original defendant and a judgment in his favor against the third-party defendant."  *Am. Export Lines*, 262 F.2d at 124–25.

Maryland law—the substantive law of the sureties' cause of action for contractual indemnification—makes the same distinction.  True, as Kirlin observes, a Maryland law claim for indemnification does not accrue until the party seeking indemnity suffers or pays an adverse judgment.  *See Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 795 A.2d 806, 814 (Md. 2002).  But that does not mean that the sureties cannot bring their indemnity claim until after an adverse

judgment.  It only means that the sureties could not have brought such a claim in an independent action against Kirlin until after an adverse judgment in McCorvey's.

Ironically, Kirlin relies on the case that dooms its claim.  ECF 47, at 10.  In *Heritage Harbour,* condominium owners sued the developers of their condo project over structural defects in the condo buildings.  795 A.2d at 808.  One developer, Heritage Harbour, then filed an independent action against the project's original builders, designers, and contractors for contractual indemnification "[i]n the event that [Heritage Harbour], individually or jointly, [is] held or found to be liable" in the first case.  *Id.* at 808–09.  The Maryland Supreme Court affirmed the dismissal of Heritage Harbour's indemnification claim as unripe.  *Id.* at 814–16.  But the court emphasized that it would not have held the indemnification claim unripe if Heritage Harbour had sought indemnification by filing a third-party complaint in the condo owners' action against it.  *Id.* at 815.  Under Maryland law, "indemnification and contribution claims [may] co-exist with their underlying suits in a third-party action *before damages accrue*.  Had appellants impleaded appellees as third parties, appellants' contingent claim against appellees would have been sustained."  *Id.* (emphasis in original).  The Appellate Court of Maryland recently reaffirmed this point.  *See Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 289 A.3d 719, 752 (Md. App. Ct. 2023).

The sureties have followed the rules of *Heritage Harbour*.  Had they brought a freestanding contractual indemnification action against Kirlin, their claim would have been unripe under Maryland law.  But they did not.  Instead, the sureties filed a third-party complaint that brought

Kirlin into the very action they say Kirlin has a duty to indemnify them against.  As a result, Maryland law is no obstacle to the sureties' contractual indemnification claim against Kirlin.[2]

Kirlin cites just one case suggesting otherwise.  In *Shelton v. United States*, No. PWG-14-2031, 2017 WL 679214 (D. Md. Feb. 21, 2017), the plaintiff sued the United States and Capitol Technology Services, Inc. ("CTSI") for negligence after he was electrocuted on the job.  *Id.* at *1.  CTSI filed a crossclaim for indemnification against the United States.  *Id.*  After the district court dismissed the plaintiff's claim against the government as barred by the FTCA, the court also dismissed CTSI's crossclaim for indemnification as unripe.  *Id.* at *6–7.  "[U]nder Maryland law, 'a claim for indemnification is derivative, and does not arise, unless and until the party seeking indemnification has paid an adverse judgment or settlement,'" the court observed.  *Id.* at *7 (quoting *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, No. PWG-11-47, 2015 WL 2085477, at *11–12 (D. Md. May 4, 2015)).  CTSI had not yet paid an adverse judgment or settlement.  *Id.*  So the court concluded that CTSI's indemnification claim was unripe.  *Id.*  Kirlin argues that the Court should apply the same analysis to this case and dismiss the sureties' claim.

This Court can see no way to reconcile *Shelton*'s holding with *Heritage Harbour*'s express recognition that "indemnification and contribution claims [may] co-exist with their underlying suits in a third-party action *before damages accrue*."  795 A.2d at 815 (emphasis in original).  To follow *Shelton*, this Court would have to flout the Maryland Supreme Court's declaration that "[h]ad appellants impleaded appellees as third parties, appellants' contingent claim against appellees would have been sustained."  *Id.*  Yet *Shelton* does not cite *Heritage Harbour*, much less

---

[2] For the same reason, it is irrelevant that (as Kirlin observes) a cause of action for contractual indemnification does not accrue when the party seeking indemnification begins to incur defense costs.  *See Heritage Harbour*, 795 A.2d at 815.  The ripeness of the sureties' claim does not depend on their litigation expenses.

distinguish the case. *Id.* at *7. And every Maryland case *Shelton* cites predates *Heritage Harbour*. *Id.* What's more, *Shelton* itself predates *Selective Way*, the recent case reaffirming *Heritage Harbour*'s acknowledgment that Maryland law "explicitly permit[s]" a defendant to pursue indemnification "by asserting third-party claims within an underlying suit." 289 A.3d at 752. This Court cannot accept Kirlin's request to follow *Shelton* instead of binding, contrary Maryland law.

The sureties have sought indemnification from Kirlin in accordance with Rule 14(a), the Fourth Circuit's ripeness precedents, and Maryland law. For these three reasons, this Court declines to dismiss the sureties' third-party complaint against Kirlin for contractual indemnification as unripe.

## B. Enforceability Under the Miller Act

Kirlin's second argument for dismissal is that the indemnification agreements Kirlin made with Clark are unenforceable under the Miller Act. According to Kirlin, the purpose of the Miller Act is "to ensure prompt payment to subcontractors for labor and material furnished to federal construction projects" like this one. ECF 47, at 12. If contractors and sureties can enforce indemnification agreements against a subcontractor like Kirlin, then they can transfer the liability the statute was enacted to create to the parties the statute was enacted to protect. *Id.* The sureties could thus "eliminat[e] [Kirlin's] rights under the Act" and "completely defeat the Act's purpose of ensuring payments to subcontractors on Federal projects." *Id.*

There is no authority for Kirlin's position. Kirlin cites no case in which any court has ever held than an indemnification agreement violates the Miller Act. And although the Fourth Circuit has not been presented with this question directly, it has affirmed judgments awarding Miller Act sureties and contractors indemnification in cases like this one. *See United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 334–36 (4th Cir. 1996); *United States*

*for Use of Barber-Coleman Co. v. U.S. Fid. & Guar. Co.*, 19 F.3d 1431 (Table), 1994 WL 108502, at *1, *4 (4th Cir. Mar. 31, 1994).

Faced with that lack of direct support, Kirlin suggests that the indemnification agreements violate the Miller Act under the logic of *United States ex rel. Kitchens To Go v. John C. Grimberg Co.*, 283 F. Supp. 3d 476 (E.D. Va. 2017). In *Kitchens To Go*, the court held that a "no damages for delay" clause was unenforceable against a Miller Act plaintiff. *Id.* at 482, 484. The clause provided that the subcontractor would not be entitled to recover delay-related damages from the contractor unless the contractor recovered those same costs from the government. *Id.* at 479. The court reasoned that the no damages for delay clause contradicted the Miller Act's text because it added a precondition for recovery in a Miller Act action not found in the statutory text. *Id.* at 482. The court found that the clause subverted the statute's purpose by preventing Miller Act "claimants who perform work [from being] paid for the work in the event . . . the principal does not pay." *Id.* at 483. And the court determined that the clause conflicted with Supreme Court precedent that "[t]he surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act if the bond is to have its intended effect." *Id.* at 481 (quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 215–16 (1957)). In consequence, the surety defendant could not enforce the clause to impair the subcontractor plaintiff's Miller Act claim. *Id.* at 484.

"*Kitchens To Go* does not bind this Court." *United States ex rel. Manganaro Midatlantic LLC v. Grimberg/Amatea JV*, No. PX-16-2816, 2018 WL 3818876, at *2 n.1 (D. Md. Aug. 10, 2018). And "courts within this district are divided" on whether the Miller Act renders no damages for delay clauses unenforceable. *Id.* But even if *Kitchens To Go* were binding authority for the proposition that no damages for delay clauses are unenforceable under the Miller Act, it would not follow that these indemnification agreements are unenforceable against Kirlin in this case.

The dispositive distinction is that only one party to this case has brought a Miller Act claim on the sureties' bond: McCorvey. The indemnification agreements Kirlin challenges do not add any preconditions to McCorvey's right to recover on its Miller Act claim. They do not prevent McCorvey from being paid if, as McCorvey alleges, Clark did not pay. And they do not make the sureties' liability to McCorvey any narrower than it should be under the statute. What the indemnification agreements would change is who must pay if the sureties are found liable for McCorvey's damages. If Kirlin had brought a Miller Act claim and the sureties had invoked the indemnification agreements to preclude it, the logic of *Kitchens To Go* might call for a different result. *Kitchens To Go* protects the rights of Miller Act plaintiffs to assert Miller Act rights. But Kirlin is not a Miller Act plaintiff. Even if this Court embraced *Kitchens To Go*, and even if its logic warranted extending its holding from no damages for delay clauses to indemnification agreements, it would still be irrelevant to this motion.

With no reason to find that the Miller Act bars the enforcement of these indemnification agreements against Kirlin, the Court declines to dismiss the sureties' third-party complaint as incompatible with the statute.

## C. Scope of Indemnification

Last, Kirlin contends that the sureties are seeking indemnification for claims beyond the scope of the agreements. ECF 47-1, at 12–16. In each agreement, Kirlin promised to indemnify the sureties from liability "directly or indirectly relating to any cause of action, claim or lien filing with respect to any (i) Work performed or which should have been performed in construction of the Project through the Effective Date, [and] (ii) any rights waived or released herein." ECF 45, ¶ 27. Kirlin contends that McCorvey's claims do not fall into either category. At least at this stage of the proceedings, Kirlin's arguments are unpersuasive.

First, the "Work" clause plainly encompasses McCorvey's claims.  Unable to dispute the plain meaning of the text, Kirlin counters that if McCorvey's claims pertain to "Work," then the indemnification agreements are so broad that they violate the Miller Act for the reasons discussed in the previous section.  ECF 47-1, at 15.  In support of its argument, Kirlin quotes the provision of the statute that provides that "[e]very person that has furnished labor or material in carrying out work" on a Miller Act project "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."  *Id.* at 15–16 (quoting 40 U.S.C. § 3133(b)(1)).  But as this Court already explained, the indemnification agreements would not prevent McCorvey from bringing its action on the payment bond.  This Court need not and does not decide whether a Miller Act surety could enforce an indemnification agreement against a Miller Act plaintiff.

Kirlin also claims that if the "Work" clause covers McCorvey's claims, then the indemnification agreements violate the prevention doctrine.  *Id.* at 15.  "Under the prevention doctrine, a general contractor that materially contributes to the failure of a condition precedent under the contract may not rely on the absence of the condition precedent as a defense in a breach of contract action."  *Young Elec. Contractors v. Dustin Constr.*, 185 A.3d 170, 190 n.22 (Md. 2018).  That doctrine is irrelevant to this dispute.  The prevention doctrine governs breach of contract cases; this is an indemnification case.  The prevention doctrine would deprive Clark and the sureties of a defense they might have in an action brought by Kirlin or McCorvey; Kirlin invokes the prevention doctrine as a defense in an action brought against the subcontractor by the sureties.  In this case, on this motion to dismiss, the prevention doctrine is a non sequitur.

Second, Kirlin asserts that it "did not waive or release the claims set forth in McCorvey's Complaint." ECF 47-1, at 14.[3]  But the sureties allege Kirlin did.  ECF 45, ¶ 38.  On Kirlin's motion to dismiss, this Court must accept the sureties' factual allegations unless the releases conflict with them.  *See Goines*, 822 F.3d at 164, 166.  Kirlin insists that they do conflict.  Each release included an attachment listing outstanding claims to which Kirlin expressly reserved its rights.  *See, e.g.*, ECF 45-5, at 2.  According to Kirlin, all of the claims at issue in McCorvey's case against the sureties were listed in those attachments and thus fall beyond the scope of the "rights waived or released."  ECF 47-1, at 13.

That is not apparent from the releases or from Kirlin's briefing.  Kirlin does not even attempt to identify which line items represent the costs McCorvey seeks to recover.  A few entries have McCorvey's name on them.  *See, e.g.*, ECF 45-4, at 11 ("McCorvey Basement Duct Delay Costs"); ECF 45-5, at 5 ("McCorvey Sheetmetal Level L1-L2 Duct Installation Delays").  But all that means on its face is that Kirlin sought compensation from Clark for costs it attributed to McCorvey.  It does not entail that those expenses are among the costs McCorvey now seeks to recoup from the sureties—let alone that those entries cover *all* of the costs McCorvey is after.  In fact, in a telling aside, Kirlin concedes that it only explicitly reserved McCorvey's claims in the releases "[t]o the extent McCorvey's claims were previously reduced to specific, individual change orders."  ECF 47-1, at 13.  To the extent they were not, Kirlin says it excluded the rest via a blanket entry for "Project Delay Costs."  *Id.*  Without discovery, it is impossible to tell whether that vague phrase encompasses McCorvey's claims.

---

[3] Kirlin also argues that McCorvey reserved its rights against Clark and the sureties.  ECF 47-1, at 14–15.  The truth of that claim has no bearing on whether Kirlin did the same.

In its reply brief, Kirlin raises an additional argument for the first time. ECF 59, at 11–13. "Generally, new arguments cannot be raised in a reply brief before the district court." *De Simone v. VSL Pharm.*, 36 F.4th 518, 531 (4th Cir. 2022). Even if the Court were to exercise its discretion to consider this argument anyway, *see id.*, the outcome would remain the same. In short, Kirlin's argument is that whatever claims it expressly reserved on the outstanding claims form are not only excluded from the release clause, but also from the "Work" clause. ECF 59, at 11–13. It would be absurd, Kirlin suggests, to find that Kirlin reserved its rights as to specific claims on one page and agreed to indemnify the sureties from them on another. *Id.*

Kirlin's framing of the relationship between the "Work" clause and the release clause may be plausible. If the Court had found that Kirlin had reserved McCorvey's claims from its releases, then Kirlin's interpretation might matter to the disposition of this motion. But at least at this stage of the proceedings, this Court has declined to accept Kirlin's assertion that it reserved McCorvey's claims from the release. As a result, Kirlin's last-ditch argument that what is reserved from the release is excluded from the "Work" clause does not change the outcome.

The Court cannot determine from the face of the third-party complaint or the releases that McCorvey's claims fall outside the scope of the indemnification agreements. So the Court will not dismiss the sureties' complaint on that basis.

## IV.   Conclusion

Kirlin's motion to dismiss the sureties' third-party complaint, ECF 47, is denied. A separate order follows.

Date: December 20, 2023

Deborah L. Boardman
United States District Judge