# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b/o MCCORVEY SHEET METAL WORKS, L.P.,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2789 |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** *et al.*, | * | |
| | * | |
| Third-Party Plaintiffs, | * | |
| v. | * | |
| **KDB Mechanical LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | * | |
| Third-Party Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| | * |
| **CLARK CONSTRUCTION GROUP, LLC,** | |
| | * |
| Cross-Claimant/Counter Defendant, | |
| | * |
| v. | |
| | * |
| **KDB Mechanical LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | |
| | * |
| Crossclaim Defendant/Counterclaimant. | * |

**MEMORANDUM OPINION**

In the latest phase of this Miller Act dispute over a construction project in Maryland, crossclaim defendant Kirlin Design Build, LLC ("Kirlin") counterclaims that cross-claimant Clark Construction Group, LLC ("Clark") breached their subcontract. ECF 83. Clark moves to dismiss Kirlin's counterclaim. ECF 86. The matter is fully briefed. ECF 86-1, 87, 88. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court grants Clark's motion to dismiss.

**I.     Background**

In 2016, the United States contracted with Clark for the design and construction of a building at Ft. Meade in Maryland. ECF 83, ¶ 7. The Miller Act, 41 U.S.C. § 3131 *et. seq.*, required Clark, as the prime contractor on a federal project of this scale, to execute a payment bond to the United States to guarantee that the subcontractors and suppliers would get paid. ECF 43, ¶¶ 8, 9. To that end, Clark executed a payment bond for $616,311,000 with Travelers Casualty and Surety Company of America, Federal Insurance Company, Federal and Deposit Company of Maryland, Zurich American Insurance Company, and Travelers Casualty and Surety Company ("the sureties"). *Id.* ¶ 8.

Later that year, Clark executed a first-tier subcontract with Kirlin Mid-Atlantic, LLC for the design and installation of the project's mechanical, plumbing, and fire protection systems. ECF 83, ¶ 8. Kirlin Mid-Atlantic then assigned the subcontract to Kirlin. *Id.* ¶ 9. On January 1, 2018, Kirlin executed a second-tier subcontract with McCorvey Sheet Metal Works, L.P. ("McCorvey") for the fabrication and installation of the mechanical ductwork. ECF 43, ¶ 16.

A few years later—with the project running behind schedule and over-budget—McCorvey filed this Miller Act suit against the sureties, seeking compensation for a variety of increased costs for which McCorvey allegedly has not been paid. *Id.* ¶ 36. In response, the sureties filed a third-

party complaint against Kirlin, asserting that Kirlin had agreed to indemnify them against McCorvey's claims. ECF 23 (original) & 45 (amended). McCorvey, in turn, amended its complaint to name Clark as an additional defendant. ECF 43. Clark then filed crossclaims against Kirlin, alleging that Kirlin had agreed to indemnify Clark, too, and blaming Kirlin for the project's woes. ECF 65.

Closing the loop, Kirlin moved to dismiss Clark's crossclaims and filed a counterclaim against Clark for breach of contract. ECF 83. According to Kirlin, Clark is the one at fault. Clark allegedly failed to provide reasonable schedules for the completion of the project. *Id.* at 25–27. Clark allegedly provided defective designs and repeatedly changed them. *Id.* at 27–28. And Clark allegedly failed to compensate Kirlin timely and fully, both for the original contract work and for the additional work Kirlin did to make up for Clark's deviations from the original plans. *Id.* at 30. For those alleged breaches of the subcontract, Kirlin requested at least $46,743,342.00 in damages: $2,187,028.18 for the original contract work, $7,668,846.00 for the change work, and the remaining money for the schedule amendments and other delays. *Id.* at 30 ¶¶ 34–35; *id.* at 31 ¶ 39. Clark moved to dismiss Kirlin's counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF 86. Kirlin opposed the motion. ECF 87. Clark replied. ECF 88.

Several provisions of the subcontract between Clark and Kirlin are particularly relevant to the dispute over Clark's crossclaims and Kirlin's counterclaim. Presenting them in the order in which they appear in the subcontract, the first is § 4(j):

> At any time all monies due Clark from the Owner[1] are not paid because of Owner withholding, Clark will, in its sole discretion, apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. However, if the withholdings are identified by the Owner as due to the undisputed fault of Clark or other subcontractors and not involving Subcontractor, then Clark shall pay Subcontractor amounts otherwise due hereunder. Subcontractor agrees that it relies

---

[1] Throughout the subcontract, "Owner" refers to the United States. ECF 83-1, at 2.

> for payment for all work performed pursuant to this Subcontract on the credit and ability to pay of the Owner, and not that of Clark, and Subcontractor agrees that payment by the Owner to Clark for work performed by the Subcontractor or its lower-tier subcontractors is a condition precedent to any payment obligation of Clark to Subcontractor.  Subcontractor agrees that the liability of Clark's sureties on any bond for payment to Subcontractor is subject to the same conditions precedent as are applicable to Clark's liability to Subcontractor.  The conditions precedent described in this paragraph shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers.

ECF 83-1, at 3 § 4(j), 45–47 (amendments).  The second is § 8(a):

> Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time.  Subcontractor shall be liable to Clark for failure to adhere to Clark's schedules including amendments even if such schedules differ from schedules set forth in the Contract Documents or the time of completion called for by the Contract Documents.

*Id.* at 4 § 8(a), 45–47 (amendments).  The third is § 8(d):

> Subcontractor shall be entitled to additional compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages from the Owner or other third parties or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between Clark and Owner.

*Id.* at 4 § 8(d), 45–47 (amendments).  The fourth is § 9(b):

> Subcontractor shall submit to Clark any requests or claims for adjustment in the price, schedule or other provisions of the Subcontract for changes directed by the Owner, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents.  Said requests or claims shall be submitted in writing by Subcontractor in time to allow Clark to comply with the applicable provisions of the Contract Documents.

*Id.* at 4 § 9(b), 45–47 (amendments).  The fifth is § 9(c):

> Clark's receipt of payment from the Owner on account of pending changes made by the Owner shall be a condition precedent to Clark's obligation to make payment for changed work to Subcontractor.  This condition precedent shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers.  Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of Clark's payment from the Owner for the pending change as reasonably determined by Clark.  Amounts paid on account of pending changes are provisional and not an admission

of liability and shall be repaid to Clark on demand whenever Clark determines there has been an overpayment.

*Id.* at 4 § 9(c), 45–47 (amendments).  The sixth is § 9(d):

> For changes ordered by Clark independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price.  If Subcontractor considers any action or inaction by Clark other than a formal change order to be a change, it shall so notify Clark within thirty (30) days of said action or inaction and seek a confirmation from Clark.  Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

*Id.* at 4 § 9(d), 45–47 (amendments).

Three paragraphs from the design-assist component of the contract are also important for the resolution of this dispute.  Paragraph 4 states, in relevant part: "Subcontractor covenants that it shall not seek, and shall not be entitled to, an increase in the cost or time of performance unless the work is expressly changed by the Owner or Clark, from the requirements of the Contract Documents."  *Id.* at 29 ¶ 4.  Paragraphs 10 and 11 provide additional detail on the requirements for compensable changes:

> Subcontractor shall, at all times through the course of the development of the Construction Drawings and Specifications, advise Clark immediately of any and all Scope Changes, both additions and deletions or items that would increase or decrease the scope of work contemplated by the Subcontractor as of the date of this Subcontract (to the extent such changes are Scope Changes as defined herein). Subcontractor shall notify Clark in writing within five (5) days after Subcontractor determines that the Architect's evolving design will have a cost impact on the Subcontract amount.  Subcontractor shall be solely liable for failure to provide timely notice and documentation so that delay and cost impacts are avoided.

> It is agreed and understood that no adjustment of the Subcontract price shall occur except to the extent there is an agreed upon Scope Change.  A "Scope Change" shall mean work (i) not included in the final Construction Drawings and Specifications (ii) which was not inferable by a subcontractor possessing a high level of skill, experience and expertise as the Subcontractor as necessary for the proper completion of the work based upon any preliminary Construction Drawings and Specifications, Contract Documents, materials and information furnished to the

5

> Subcontractor during the development of the Construction Drawings and Specifications (iii) constitutes a material change in the RFP requirements and/or documents.

*Id.* at 30 ¶¶ 10–11.

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to include in their complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of that statement. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6). A court will deny a Rule 12(b)(6) motion if, but only if, the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on the motion, a court accepts the well-pleaded allegations as true, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), but "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). A complaint that merely recites the elements of the cause of action or couches legal conclusions as facts cannot overcome a Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555; *Turner*, 930 F.3d at 644. In resolving a Rule 12(b)(6) motion, a court may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c).

## III.    Discussion

This case arises under a federal statute: the Miller Act. Nevertheless, when a Miller Act case presents an ordinary question of contract law—like whether one party breached a contract—

the court must answer that question according to the law of the state where "the predominant acts relevant to the [contract] and its performance occurred." *See United States v. Turner Constr. Co.*, 946 F.3d 201, 205 n.2 (4th Cir. 2019) (citing *United States ex rel. Shields, Inc. v. Citizens & S. Nat'l Bank*, 367 F.2d 473, 477 (4th Cir. 1966)). This case concerns a project in Maryland. So here, Maryland law applies.

Under Maryland law, "a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (1977)). Any ambiguity in the complaint must be construed against the pleader. *Id.*

### A. Damages for Delay

Kirlin seeks compensation for the costs the company incurred as a result of Clark's amendments to the schedule and other delays. Clark contends that the subcontract contains a "no damages for delay" clause, pursuant to which Clark had no contractual obligation to compensate Kirlin for these costs. ECF 86, at 12–13. A no damages for delay clause limits one party's obligation to compensate the other for delay-related expenses. *See United States v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 479 (E.D. Va. 2017). Maryland courts have held that clauses like these generally are enforceable because they serve "an important policy function" in government-funded projects: protecting scarce public resources. *See State Highway Admin. v. Greiner Eng'g Scis., Inc.*, 577 A.2d 363, 373 (Md. Ct. Spec. App. 1990).

The clause in the subcontract between Kirlin and Clark entitles Kirlin to "compensation for compliance with schedule amendments or damages for delay *only to the extent* the Contract Documents entitle Clark to damages from the [United States] or other third parties or to a contract

adjustment increasing the price." ECF 83-1, at 4 § 8(d), 45–47 (amendments) (emphasis added). That is, the subcontract only imposes a duty on Clark to cover Kirlin's expenses arising from amendments to the schedule or other delays to the extent that the contract imposes a duty on the United States or a third party to cover Clark's same costs.

Kirlin fails to allege that Clark breached this clause, or any other part of the contract, by not compensating Kirlin for delays. Most of the compensation Kirlin seeks is for compliance with schedule amendments and damages for delay: specifically, the expenses the subcontractor allegedly incurred to address Clark's amendments to the project schedule, ECF 83, at 25–27, Clark's untimely provision of utilities and power to the site, *id.* at 28–29, and Clark's time-consuming COVID-19 safety protocols, *id.* at 29. In fact, one section of Kirlin's counterclaim is titled "Damages to [Kirlin] from Clark's Delays." ECF 83, at 29. Yet Kirlin does not allege that the contract between Clark and the United States entitles Clark to damages from the government or any third party or a contract price adjustment for those delays. That sinks this portion of Kirlin's claim. Because Kirlin has not pled the contractual condition precedent for entitlement to damages for scheduling and delay expenses, Kirlin has not pled that Clark had a duty to pay Kirlin for these costs. So the subcontractor has not stated a claim for breach of contract as to the uncompensated schedule changes and delays. *Cf. Chasney & Co. v. Hartford Accident & Indem.*, No. WDQ-14-2148, 2015 WL 3887792, at *3 (D. Md. June 22, 2015) (denying motion to dismiss based on similar clause because the plaintiff alleged that the United States had compensated the defendant for the delays).

Kirlin counters that the no damages for delay provision only prevents the subcontractor from recovering for delays if Clark "reasonably provided and amended its schedules." ECF 87, at 6. And Kirlin alleges that Clark's amendments were unreasonable. ECF 83, at 26 ¶¶ 14–18. The

8

problem with this theory is that the subcontract does not circumscribe the no damages for delay clause in the way Kirlin claims. Nothing in § 8(d) is conditional on the reasonableness of Clark's schedule amendments.

Kirlin says that another clause supplies that reasonableness condition: § 8(a). ECF 87, at 6. Kirlin is wrong. Section 8(a) provides that the "Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time." ECF 83-1, at 4 § 8(a), 45–47 (amendments). That clause may well condition Kirlin's duty to meet the amended schedules on the reasonableness of Clark's amendments. But nothing in § 8(a) indicates that the no damages for delay clause applies only to damages incurred from compliance with reasonable schedule amendments. If anything, the fact that § 8(a) binds Kirlin to act "in accordance with Clark's schedules as *reasonably* amended," *id.* (emphasis added), while § 8(d) limits "compensation for compliance with schedule amendments," *id.* at 4 § 8(d), 45–47 (amendments), underscores that if the parties intended to limit the no damages for delay clause to "reasonable schedule amendments," they knew how to do so. The no damages for delay clause means what it says: Kirlin has the right to "compensation for compliance with schedule amendments or damages for delay *only to the extent* the Contract Documents entitle Clark to damages from the [United States] or other third parties or to a contract adjustment increasing the price." ECF 83-1, at 4 § 8(d), 45–47 (amendments) (emphasis added). That result is in accord with Maryland contract law, which hews to a "literal enforcement approach" to no damages for delay clauses—interpreting them per the objective meaning of their terms. *See State Highway Admin.*, 577 A.2d at 367, 371; *see also United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d. 104, 110 (D.D.C. 2006) (applying Maryland law).

9

Unable to read a reasonability limit into the no damages for delay clause, Kirlin tries another tack: arguing that two other clauses compel Clark to compensate Kirlin for the delays even if "the Government is unwilling to pay for [them]." ECF 87, at 8. Section 4(j) provides that when "monies due Clark from the [United States] are not paid because of [the government's] withholding," Clark may "reduce the payments otherwise due Subcontractor accordingly," but if the United States withholds money from Clark "due to the undisputed fault of Clark . . . then Clark shall pay Subcontractor amounts otherwise due hereunder." ECF 83-1, at 3 § 4(j), 45–47 (amendments). Similarly, § 9(c) provides that although Clark generally has no duty to pay Kirlin for work the United States changed until the United States pays Clark for the changes, "[t]his condition precedent shall not apply if the [government's] non-payment is due to the undisputed fault of Clark." *Id.* at 4 § 9(c), 45–47 (amendments). Kirlin suggests that together, these clauses create a breach exception to the no damages for delay clause: If Clark is at fault for the delay, then Clark has to compensate Kirlin whether the United States has compensated Clark or not.

Kirlin's reading is untenable. Each clause identifies a condition precedent for Clark's obligation to pay Kirlin: the United States paying Clark. Then each clause waives that condition precedent if the United States has withheld funds from Clark "due to the undisputed fault of Clark." Yet neither condition precedent is relevant here. Clark is not arguing that it had no duty to pay Kirlin for the delays because, per § 4(j) or § 9(c), the United States did not pay Clark. Clark is arguing that Kirlin has failed to plead that Clark had any duty to pay Kirlin for the delays because Kirlin has not alleged, per § 8(d), that the United States had any duty to pay Clark for them. And even if the conditions precedent in § 4(j) or § 9(c) were relevant here, the sentences that waive them would not apply. Kirlin has not alleged that the United States has withheld funds from Clark

due to any fault of Clark's, let alone an "undisputed fault." These clauses have nothing to do with the no damages for delay clause or whether it applies to this case.

Kirlin is only entitled to recover damages for delay or costs incurred for compliance with schedule amendments "to the extent" the contract entitles Clark to payment from the United States for the same circumstances. Kirlin has not alleged that Clark is entitled to payment for these issues from the United States. So Kirlin has not pled that it had any right to payment for compliance with schedule amendments or other delays. Accordingly, Kirlin's claims against Clark arising from Clark's delays are dismissed without prejudice.

### B. Base Contract Work

Not all of Kirlin's claims are barred by the no damages for delay clause. Kirlin also alleges that Clark "refus[ed] to pay amounts due to KDB for base contract and changes work," ECF 83, at 31 ¶ 37: $2,187,028.18 and $7,668,846.00, respectively. Kirlin's claim for the base contract work is brief:

> In addition to causing the delays described above, Clark has not paid KDB one dollar since November 2021 for outstanding change order and contract work due to KDB under the Subcontract. KDB has continued to work at the site and to notify Clark frequently of the need to pay KDB for work performed and accepted and used by Clark and the Government.
>
> . . .
>
> Clark has also refused to pay KDB $2,187,028.18 for contract work completed by KDB.

*Id.* at 30 ¶¶ 33, 35. Clark argues that Kirlin fails to allege that the subcontractor satisfied the conditions precedent for payment, and as a result, has not pled that Clark had any duty to pay. ECF 86-1, at 23.

Clark is correct that Kirlin has not alleged that Kirlin satisfied the contractual prerequisites to entitlement to the outstanding payment. Among other things, the contract requires that Kirlin

11

submit a written request for each partial payment and accompany that request with "claim releases and lien waivers with respect to all work performed and materials supplied through the date of the immediately preceding request for partial payment." ECF 83-1, at 6, 107–11. Kirlin simply never alleges that it did so. And that means that Kirlin has not pled duty. For these reasons, Kirlin's claim that Clark breached the contract by failing to pay the subcontractor for a portion of the base contract work is dismissed without prejudice.

### C. Change Work

That leaves Kirlin's claim that Clark failed to pay the subcontractor for the change work. According to the terms of the contract, Clark had a duty to pay extra for a change only if the change was outside the scope of work and either Clark formally ordered the change or Kirlin timely notified Clark that it considered the action or inaction at issue a change and sought Clark's confirmation. *See* ECF 83-1, at 4 §§ 9(b), 45–47 (amendments) & 9(d), 45–47 (amendments); *id.* at 29 ¶ 4; *id.* at 30 ¶¶ 10–11. Kirlin's counterclaim does not allege that the changes for which it seeks relief satisfy these requirements. Kirlin alleges that at least some of the changes Clark made in the course of the project were outside the scope of work. ECF 83, at 25 ¶ 12. Kirlin alleges that it notified Clark that it interpreted some actions or inactions as changes. *Id.* at 27 ¶ 19. And Kirlin alleges that Clark ordered some changes, too. *Id.* at 27 ¶ 20. But Kirlin never clearly alleges that *any* change for which it seeks payment met both the scope of work criterion and either the formal order criterion or the notice and confirmation criterion. And Kirlin never alleges that *every* change did. Worse still, what little Kirlin says suggests that Kirlin may not have attempted to confirm the changes at issue until earlier this year, and that Clark may not have confirmed them. *See id.* at 30 ¶ 34 (describing Clark's disputing of the changes). Maryland law requires this Court to construe these ambiguities in the pleadings against Kirlin. *See Polek*, 36 A.3d at 416. Because Kirlin has

12

not alleged that it satisfied the preconditions for entitlement to payment for these changes, Kirlin has not pled that Clark had a duty to pay. That means Kirlin's breach of contract claim, insofar as it rests on the change work, comes up short. It is dismissed without prejudice.

### D. Kirlin's Motion to Dismiss Clark's Crossclaims

Finally, Kirlin "requests" that the Court dismiss Clark's crossclaims, ECF 65, with prejudice. ECF 83, at 31. But Kirlin offers no rationale for that request, let alone a proper memorandum in support. Construing Kirlin's request as a motion to dismiss Clark's crossclaims, the Court denies the motion.

### IV. Conclusion

Clark's motion to dismiss Kirlin's counterclaim, ECF 86, is granted. Kirlin's motion to dismiss Clark's crossclaims, ECF 83, is denied. A separate order follows.

Date: December 20, 2023

Deborah L. Boardman
United States District Judge

13