## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA f/u/b/o MCCORVEY SHEET METAL WORKS, L.P.,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2789 |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**, *et al.*, | * |
| | * |
| Third-Party Plaintiffs, | * |
| v. | * |
| **KDB MECHANICAL LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | * |
| Third-Party Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| | * |
| **CLARK CONSTRUCTION GROUP, LLC,** | * |
| Cross-Claimant/Counter Defendant, | * |
| v. | * |
| **KDB MECHANICAL LLC f/k/a KIRLIN DESIGN BUILD, LLC,** | * |
| Crossclaim Defendant/Counterclaimant. | * |

**MEMORANDUM OPINION**

In the last round of this Miller Act dispute over a construction project in Maryland, the Court granted the motion of cross-claimant Clark Construction Group, LLC ("Clark") to dismiss the counterclaim of crossclaim defendant Kirlin Design Build, LLC ("Kirlin"), who had claimed Clark breached their subcontract. ECF 101. Now, Kirlin has moved to file an amended answer and counterclaim to revive its breach of contract claim against Clark and add an additional claim under the Maryland Prompt Payment Act ("MPPA"), Md. Code Ann., Real Prop. §§ 9-301 *et seq.* ECF 121. The motion is fully briefed. ECF 121, 122, 142, 152, 156-1, 158. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court grants, in part, Kirlin's motion for leave to file an amended answer and counterclaim.

**I.      Background**

In 2016, the United States contracted with Clark for the design and construction of a building at Ft. Meade in Maryland. ECF 122, ¶ 7. The Miller Act, 41 U.S.C. §§ 3131 *et seq.*, required Clark, as the prime contractor on a federal project of this scale, to execute a payment bond to the United States to guarantee that the subcontractors and suppliers would get paid. ECF 43, ¶¶ 8, 9. To that end, Clark executed a payment bond for $616,311,000 with Travelers Casualty and Surety Company of America, Federal Insurance Company, Federal and Deposit Company of Maryland, Zurich American Insurance Company, and Travelers Casualty and Surety Company ("the sureties"). *Id.* ¶ 8.

Later that year, Clark executed a first-tier subcontract with Kirlin Mid-Atlantic, LLC for the design and installation of the project's mechanical, plumbing, and fire protection systems. ECF 122, ¶ 8. Kirlin Mid-Atlantic then assigned the subcontract to Kirlin. *Id.* ¶ 9. On January 1, 2018,

2

Kirlin executed a second-tier subcontract with McCorvey Sheet Metal Works, L.P. ("McCorvey") for the fabrication and installation of the mechanical ductwork. ECF 43, ¶ 16.

A few years later—with the project running behind schedule and over-budget—McCorvey filed this Miller Act suit against the sureties, seeking compensation for a variety of increased costs for which McCorvey allegedly has not been paid. *Id.* ¶ 36. In response, the sureties filed a third-party complaint against Kirlin, asserting that Kirlin had agreed to indemnify them against McCorvey's claims. ECF 23 (original) & 45 (amended). McCorvey, in turn, amended its complaint to name Clark as an additional defendant. ECF 43. Clark then filed crossclaims against Kirlin, alleging that Kirlin had agreed to indemnify Clark, too, and blaming Kirlin for the project's woes. ECF 65.

Closing the loop, Kirlin moved to dismiss Clark's crossclaims and filed a counterclaim against Clark for breach of contract. ECF 83. Clark moved to dismiss Kirlin's counterclaim. ECF 86. The Court denied Kirlin's motion to dismiss Clark's crossclaims and granted Clark's motion to dismiss Kirlin's counterclaim without prejudice. ECF 101.

Now, Kirlin has moved for leave to file an amended answer and counterclaim against Clark for breach of contract. ECF 121. Clark filed an opposition. ECF 142. Kirlin replied. ECF 152. Clark also moved for leave to file a surreply. ECF 156.[1]

---

[1] The Court will grant Clark's motion for leave to file a surreply. Although surreplies are generally impermissible, they are permissible when "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)). That is the case here. Kirlin's motion for leave to file the proposed amended counterclaim featured almost no argument at all. *See* ECF 121, at 2–4. As a result, Clark had no opportunity in its opposition to address any of the arguments Kirlin later made in its reply.

Several provisions of the subcontract between Clark and Kirlin that were relevant to Clark's motion to dismiss Kirlin's original counterclaim remain relevant now. Presenting them in the order in which they appear in the subcontract, the first is § 4(j):

> At any time all monies due Clark from the Owner[2] are not paid because of Owner withholding, Clark will, in its sole discretion, apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. However, if the withholdings are identified by the Owner as due to the undisputed fault of Clark or other subcontractors and not involving Subcontractor, then Clark shall pay Subcontractor amounts otherwise due hereunder. Subcontractor agrees that it relies for payment for all work performed pursuant to this Subcontract on the credit and ability to pay of the Owner, and not that of Clark, and Subcontractor agrees that payment by the Owner to Clark for work performed by the Subcontractor or its lower-tier subcontractors is a condition precedent to any payment obligation of Clark to Subcontractor. Subcontractor agrees that the liability of Clark's sureties on any bond for payment to Subcontractor is subject to the same conditions precedent as are applicable to Clark's liability to Subcontractor. The conditions precedent described in this paragraph shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers.

ECF 83-1, at 3 § 4(j), 45–47 (amendments).[3] The second is § 8(a):

> Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time. Subcontractor shall be liable to Clark for failure to adhere to Clark's schedules including amendments even if such schedules differ from schedules set forth in the Contract Documents or the time of completion called for by the Contract Documents.

*Id.* at 4 § 8(a), 45–47 (amendments). The third is § 8(d):

> Subcontractor shall be entitled to additional compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages from the Owner or other third parties or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between Clark and Owner.

*Id.* at 4 § 8(d), 45–47 (amendments). The fourth is § 9(b):

---

[2] Throughout the subcontract, "Owner" refers to the United States. ECF 83-1, at 2.

[3] Kirlin attached the complete subcontract to its original answer and counterclaim. ECF 83-1. Kirlin has not reattached the subcontract to its proposed amended answer and counterclaim, but the Court may consider it anyway. *See* Loc. R. 103.6 (amended pleadings need not include original attachments).

> Subcontractor shall submit to Clark any requests or claims for adjustment in the price, schedule or other provisions of the Subcontract for changes directed by the Owner, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents. Said requests or claims shall be submitted in writing by Subcontractor in time to allow Clark to comply with the applicable provisions of the Contract Documents.

*Id.* at 4 § 9(b), 45–47 (amendments). The fifth is § 9(c):

> Clark's receipt of payment from the Owner on account of pending changes made by the Owner shall be a condition precedent to Clark's obligation to make payment for changed work to Subcontractor. This condition precedent shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers. Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of Clark's payment from the Owner for the pending change as reasonably determined by Clark. Amounts paid on account of pending changes are provisional and not an admission of liability and shall be repaid to Clark on demand whenever Clark determines there has been an overpayment.

*Id.* at 4 § 9(c), 45–47 (amendments). The sixth is § 9(d):

> For changes ordered by Clark independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price. If Subcontractor considers any action or inaction by Clark other than a formal change order to be a change, it shall so notify Clark within thirty (30) days of said action or inaction and seek a confirmation from Clark. Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

*Id.* at 4 § 9(d), 45–47 (amendments).

Three paragraphs from the design-assist component of the contract are also important for the resolution of this dispute. Paragraph 4 states, in relevant part: "Subcontractor covenants that it shall not seek, and shall not be entitled to, an increase in the cost or time of performance unless the work is expressly changed by the Owner or Clark, from the requirements of the Contract Documents." *Id.* at 29 ¶ 4. Paragraphs 10 and 11 provide additional detail on the requirements for compensable changes:

5

> Subcontractor shall, at all times through the course of the development of the Construction Drawings and Specifications, advise Clark immediately of any and all Scope Changes, both additions and deletions or items that would increase or decrease the scope of work contemplated by the Subcontractor as of the date of this Subcontract (to the extent such changes are Scope Changes as defined herein). Subcontractor shall notify Clark in writing within five (5) days after Subcontractor determines that the Architect's evolving design will have a cost impact on the Subcontract amount. Subcontractor shall be solely liable for failure to provide timely notice and documentation so that delay and cost impacts are avoided.
>
> It is agreed and understood that no adjustment of the Subcontract price shall occur except to the extent there is an agreed upon Scope Change. A "Scope Change" shall mean work (i) not included in the final Construction Drawings and Specifications (ii) which was not inferable by a subcontractor possessing a high level of skill, experience and expertise as the Subcontractor as necessary for the proper completion of the work based upon any preliminary Construction Drawings and Specifications, Contract Documents, materials and information furnished to the Subcontractor during the development of the Construction Drawings and Specifications (iii) constitutes a material change in the RFP requirements and/or documents.

*Id.* at 30 ¶¶ 10–11.

## II.     Standard of Review

The plaintiff may amend their complaint once as a matter of course. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing Fed. R. Civ. P. 15(a)). After the defendant has filed a responsive pleading or more than 21 days have passed since the defendant filed a motion to dismiss, the plaintiff may amend only with the consent of the defendant or by leave of the court. *Id.* While the court "should freely give leave when justice so requires," the court "may deny leave to amend a pleading if the amendment would have been futile." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting Fed. R. Civ. P. 15(a)(2) and then *Laber*, 438 F.3d at 426). A proposed amended complaint would be futile if the claim it presents would not survive a motion to dismiss. *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). A complaint would survive a motion to dismiss if, but only if, the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Turner v.*

*Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on the motion, a court accepts the well-pleaded allegations as true, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), but "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). A complaint that merely recites the elements of the cause of action or couches legal conclusions as facts cannot overcome a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Turner*, 930 F.3d at 644. In resolving a Rule 12(b)(6) motion, a court may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c).

**III.    Discussion**

As the Court noted in its previous opinion, this case arises under a federal statute: the Miller Act. Nevertheless, when a Miller Act case presents an ordinary question of contract law—like whether one party breached a contract—the Court must answer that question according to the law of the state where "the predominant acts relevant to the [contract] and its performance occurred." *See United States v. Turner Constr. Co.*, 946 F.3d 201, 205 n.2 (4th Cir. 2019) (citing *United States ex rel. Shields, Inc. v. Citizens & S. Nat'l Bank*, 367 F.2d 473, 477 (4th Cir. 1966)). This case concerns a project in Maryland. So here, Maryland law applies.

Under Maryland law, "a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977)). Any ambiguity in the complaint must be construed against the pleader. *Id.*

7

### A. Damages for Delay

As before, Kirlin seeks compensation for the costs the company allegedly incurred as a result of Clark's amendments to the schedule and other delays. And as before, Clark contends that the subcontract contains a "no damages for delay" clause, pursuant to which Clark had no contractual obligation to compensate Kirlin for these costs. ECF 142, at 8–20. A no damages for delay clause limits one party's obligation to compensate the other for delay-related expenses. *See United States v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 479 (E.D. Va. 2017). Maryland courts have held that clauses like these generally are enforceable because they serve "an important policy function" in government-funded projects: protecting scarce public resources. *See State Hwy. Admin. v. Greiner Eng'g Scis., Inc.*, 577 A.2d 363, 373 (Md. App. Ct. 1990).

The no damages for delay clause in the subcontract between Kirlin and Clark entitles Kirlin to "compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages from the [United States] or other third parties or to a contract adjustment increasing the price." ECF 83-1, at 4 § 8(d), 45–47 (amendments). That is, the subcontract only imposes a duty on Clark to cover Kirlin's expenses arising from amendments to the schedule or other delays to the extent that the prime contract imposes a duty on the United States or a third party to cover Clark's same costs.

In its previous opinion, the Court held that Kirlin had failed to allege that Clark breached the subcontract by not compensating Kirlin for delays because Kirlin had not alleged that the prime contract between Clark and the United States entitled Clark to damages from the government or any third party or a contract price adjustment for those delays. *See* ECF 100, at 8.

Kirlin's proposed amended counterclaim attempts to address that defect head on. "With respect to all delay damages or compensation sought herein for schedule amendments, Clark was

8

entitled to damages from the Owner or other third parties," Kirlin alleges. ECF 122, ¶ 117. Kirlin also alleges that Clark was entitled to recover from another subcontractor, Helix. *Id.* ¶ 39.

Nevertheless, Kirlin's claim for damages for delay still falls short. As noted, the subcontract between Kirlin and Clark entitles Kirlin to damages for delay "only to the extent *the Contract Documents* entitle Clark to damages from the [United States] or other third parties or to a contract adjustment increasing the price." ECF 83-1, at 4 § 8(d), 45–47 (amendments) (emphasis added). Even though Kirlin has alleged that Clark was entitled to recover from the United States or third parties for the delays at issue, Kirlin has not alleged that Clark was entitled to recover under the "Contract Documents"—basically, the prime contract between Clark and the United States. *See* ECF 83-1, at 10–11; *see also* ECF 142, at 9 n.4. For that reason, Kirlin has not plausibly alleged that Clark had any duty to pay the subcontractor for the delays.[4]

Kirlin fails to state a claim for breach of contract concerning its delay-related costs.

### B. Base Contract Work

Kirlin also revives its claim that Clark breached the subcontract by failing to pay the subcontractor $2,187,028.00 for base contract work. Previously, the Court held that Kirlin had failed to state a claim for breach of contract concerning this work because Kirlin had failed to allege that it met the subcontract's requirement that Kirlin submit a written request for each partial payment and accompany that request with "claim releases and lien waivers with respect to all work

---

[4] In its reply brief, Kirlin argues that under the prevention doctrine, Clark may not benefit from the failure of a condition precedent Clark itself caused—so if the reason Clark was not entitled to payment from the United States for the delays Kirlin identifies was that Clark did not request payment from the government, the fact that Clark was not entitled to payment does not bar Kirlin's claim against Clark. *See* ECF 152, at 22 (citing *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717 (4th Cir. 2000)). Whether Kirlin's argument is sound or not, it is irrelevant. What sinks Kirlin's claim is that Kirlin did not allege that the Contract Documents entitled Clark to payment from the United States or a third party for the delays.

9

performed and materials supplied through the date of the immediately preceding request for partial payment." *See* ECF 100, at 11–12 (quoting ECF 83-1, at 6, 107–11). Kirlin's proposed amended counterclaim includes this new allegation:

> As of the date of this filing, $2,187,028.00 remains unpaid to KDB for work performed by KDB and for which payment is due under the base Subcontract. KDB satisfied the contractual prerequisites to payment of this amount by, without limitation, submitting a written request for each partial payment making up the total of $2,187,028.00, with the required claim releases and lien waiver with respect to all work performed and material supplied through the date of the immediately preceding request for partial payment.

ECF 122, ¶ 95. To supplement that allegation, Kirlin details the nine specific requests for partial payment it alleges it submitted to Clark that allegedly remain unpaid. *Id.* ¶¶ 87–94.

Clark contends that even with these new allegations, the counterclaim still does not include enough to establish that Clark had a duty to pay Kirlin the disputed funds. First, Clark argues that the new allegations are conclusory. The Court disagrees. Kirlin has dated each request for partial payment and identified its value. *See, e.g., id.* ¶ 87 ("In January of 2022, [Kirlin] submitted a payment application in the amount of $142,717.24 for work performed in December of 2021 (Application No. 64). Clark has not paid [Kirlin] for Application No. 64 despite receiving payment from the Owner and despite [Kirlin] being in compliance with the terms of the Subcontract."). Short of attaching each request, it is not clear what more Kirlin could be expected to do at this stage of the proceedings.

Second, Clark argues that Kirlin was not entitled to the money at issue because the subcontract permitted Clark to withhold "amounts otherwise due . . . to cover Clark's reasonable estimate of any costs or liability Clark has incurred or may incur for which [Kirlin] may be responsible." ECF 142, at 22 (citing ECF 83-1, at 3 § 4(g)). At this stage of the proceedings, Kirlin need not anticipate and negate that defense. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464–66

(4th Cir. 2007). To state a claim for breach of contract, all Kirlin must do is plausibly allege that Clark had a duty to pay and breached it. *See RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010) ("[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant.") (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). Kirlin has alleged that it satisfied the contractual requirements that would obligate Clark to pay for the base contract work and that Clark did not pay $2,187,028.00 it owed Kirlin for that work. Clark may later wish to defend against Kirlin's claim by arguing that Clark withheld this "amount[] otherwise due" in order to cover liability for which it holds Kirlin responsible. *See* ECF 83-1, at 3 § 4(g). But the facts necessary to sustain that defense are not apparent on the face of the complaint, and Kirlin need not plead around that defense now. *See Goodman*, 494 F.3d at 464–66.

Kirlin has pled sufficiently that Clark breached the subcontract by failing to pay $2,187,028.00 due for base contract work.

**C. Change Work**

Kirlin also renews its claim that Clark breached the subcontract by failing to pay the subcontractor $7,668,846.00 for work to comply with change orders for the project. The subcontract provides that Clark had a duty to pay extra for a change only if the change was outside the scope of work and either Clark formally ordered the change or Kirlin timely notified Clark that it considered the action or inaction at issue a change and sought Clark's confirmation. *See* ECF 83-1, at 4 §§ 9(b), 45–47 (amendments) & 9(d), 45–47 (amendments); *id.* at 29 ¶ 4; *id.* at 30 ¶¶ 10–11. Not every change is a scope change. A change is a scope change if, but only if, the work (i) was not included in the final drawings and specifications, (ii) was not inferable by a sufficiently skilled subcontractor, and (iii) was a material departure from the original requirements. *Id.* at 30

¶¶ 10–11. Even then, the subcontract provides that "no adjustment of the Subcontract price shall occur except to the extent there is an *agreed upon* Scope Change." *Id.* ¶ 11 (emphasis added). In its previous opinion, the Court determined that Kirlin did not allege that the changes for which it sought relief satisfied these requirements. Kirlin never clearly alleged that *any* change for which it sought payment met both the scope of work criterion and either the formal order criterion or the notice and confirmation criterion—let alone every change.

Kirlin's proposed counterclaim does not quite close these gaps. The proposed counterclaim includes a new allegation that each change met the formal order criterion or the notice and confirmation criterion: "For all of the change order claims which total $7,668,846.00, Clark either formally ordered the change or Kirlin timely notified Clark that it considered the action or inaction at issue a change order and sought Clark's confirmation (through, without limitation, proposed change orders, written notices and meetings)." ECF 122, ¶ 99. But even assuming that this sweeping new allegation is not conclusory, Kirlin has failed to allege that any of the changes at issue were mutually recognized scope changes. Consider the only three examples Kirlin alleges in any detail: the boiler work, *id.* ¶¶ 54–59; the "Flex Pipe" work, *id.* ¶¶ 60–62; and the replacement of the Cement Water Heaters, *id.* ¶¶ 63–68. Kirlin labels only one—replacing the Cement Water Heaters—a scope change. *Id.* ¶ 68. But Kirlin does not allege that replacing the water heaters was a material departure from the original plans—the third element of a scope change. And although Kirlin alleges that it notified Clark that Kirlin considered replacing the water heaters "a change," Kirlin does not allege that Clark agreed the change constituted a scope change. *See id.* ¶ 67. In fact, Kirlin alleges that Clark denied the proposed change order and back-charged Kirlin for installing the original water heaters. *Id.* ¶ 68. So Kirlin has not alleged that the only one of its three

12

examples that Kirlin claims constituted a scope change actually met the criteria that would entitle Kirlin to compensation from Clark.[5]

Kirlin still has not pled sufficiently that Clark breached the subcontract by failing to compensate Kirlin for the change work.

### D. Maryland Prompt Payment Act

Kirlin also claims Clark violated the MPPA.[6] ECF 122, ¶ 112. The MPPA entitles a contractor or subcontractor who does work or furnishes material under a contract to the payment of "undisputed amounts" due within seven days of the date provided in the contract or 30 days of the owner taking possession. *Gray Constr., Inc. v. Medline Indus., Inc.*, No. SAG-19-3405, 2023 WL 2333218, at *17 (D. Md. Mar. 1, 2023) (quoting Md. Code Ann., Real Prop. § 9-302). An

---

[5] In its reply, Kirlin claims that the first material breach rule excuses Kirlin from its obligation to fulfill the contractual conditions for payment after Clark breached the contract by failing to pay Kirlin in November 2021. *See* ECF 152, at 21–22 (citing *Final Analysis Commc'n Servs., Inc. v. Gen. Dynamics Corp.*, 253 Fed. App'x 307, 313 (4th Cir. 2007)). The first material breach rule provides that "a material breach by one party to a contract excuses the other party from performance." *Final Analysis*, 253 Fed. App'x at 313 (citing *Rogers Refrigeration Co. v. Pulliam's Garage, Inc.*, 505 A.2d 878, 883 (Md. App. Ct. 1986)). That means that when one party breaches, the other "may follow either of two alternative courses of action . . . : (1) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission." *Lazorcak v. Feuerstein*, 327 A.2d 477, 480 (Md. 1974). It does not mean that when one party breaches the contract, the other may demand payment for post-breach work without meeting the contractual conditions for payment. Kirlin's first material breach rule argument is meritless.

[6] Because Kirlin's proposed counterclaim lists only one count—breach of contract—and places Kirlin's claim that Clark violated the MPPA within that count, it is not immediately clear whether Kirlin intends to maintain a second, independent claim under the MPPA or whether Kirlin thinks Clark's alleged violation of the MPPA constitutes a breach of contract. However, the last sentence of Kirlin's proposed counterclaim asks the Court to enter judgment against Clark and in favor of Kirlin for damages "resulting from Clark's material breaches of the Subcontract and violations of the Maryland Prompt Payment Act." ECF 122, at 50. And Clark takes the proposed counterclaim to include a distinct count for violation of the MPPA. *See* ECF 142, at 22–23. Accordingly, the Court reads the proposed counterclaim to include two claims: one for breach of contract and one for violation of the MPPA.

"undisputed amount" is "an amounted owed on a contract for which there is no good faith dispute, including any retainage withheld." *Id.* (quoting Real Prop. § 9-301(f)).

Kirlin has pled that Clark violated the MPPA by failing to timely pay Kirlin $595,058.00 for change work. Kirlin alleges that it is a subcontractor who worked on and furnished material for this project. Kirlin alleges that Clark, the prime contractor, failed to pay Kirlin for the work at issue in this counterclaim within seven days of the contractually specified date: the date the United States paid Clark for the work. And Kirlin specifically alleges that one subset of the money Clark did not timely pay Kirlin was undisputedly due. According to Kirlin, in August 2022 "Clark admitted that [Kirlin] was entitled to $595,058.00 of the funds sought for change work," then refused to pay Kirlin anyway. ECF 122, ¶ 102. So Kirlin has pled sufficiently that Clark violated the MPPA by failing to timely pay Kirlin the $595,058.00 undisputedly due.

To be sure, Kirlin also inadvertently acknowledges that Clark disputed that it owed Kirlin other payments at issue in the proposed counterclaim. For instance, Kirlin alleges that Clark rejected many of the other change requests Kirlin says Clark has not timely paid for. *See id.* ¶ 104. And Kirlin offers nothing to state an MPPA claim for the rest of the money at issue (like the delay damages or the base contract work) save for a single conclusory allegation that "[b]y failing to pay [Kirlin] undisputed amounts owed to [Kirlin] within seven days of receiving payment from [the United States] for [Kirlin's] work and materials, Clark violated the Maryland Prompt Payment Act." *Id.* ¶ 112. That "[t]hreadbare recital[]" of the elements of an MPPA claim "do[es] not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So Kirlin's MPPA claim is limited to the $595,058.00 it has plausibly alleged was undisputedly due when Clark failed to timely pay.

Clark claims that the MPPA does not apply to federally funded projects in the first place. But the statute specifically exempts certain contracts from its terms, and contracts for federally

14

funded projects are not among them. *See* Real Prop. §§ 9-302 (exempting contracts between a contractor and the state of Maryland, a county, a municipality, a board of education, and a public authority or instrumentality), 9-305 (exempting "contract[s] for the construction and sale of a single family residential dwelling," "any transaction under the Custom Home Protection Act," and "a home improvement contract"). The interpretive canon *expressio unius est exclusio alterius* instructs that the inclusion of these exemptions implies the exclusion of any others. *See United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019). Clark also suggests that *United States ex rel. Allied Bldg. Products Corp. v. Federal Ins. Co.*, 729 F. Supp. 477, 478 (D. Md. 1990), held that the MPPA does not apply to federal construction projects. But that case concerned a different statute: the Maryland Constructive Trust Statute, Real Prop. §§ 9–201 *et seq. See Allied Bldg.*, 729 F. Supp. at 478. By its own terms, the Maryland Constructive Trust Statute applies only to state-financed construction projects and projects subject to the state mechanics' lien statute. *See id.* The MPPA applies to federally funded projects like this one.

Alternatively, Clark insists that it disputed all of the money Kirlin alleges Clark failed to pay the subcontractor on time. But that factual assertion contradicts Kirlin's allegation that Clark conceded it owed Kirlin $595,058.00 for change work in August 2022. At this stage of the case, the Court has a duty to accept Kirlin's well-pleaded allegations as true, *see Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), and may not "resolve contests surrounding facts," *Ray*, 948 F.3d at 226 (quoting *Tobey*, 706 F.3d at 387). On the allegations in the proposed counterclaim, Clark undisputedly owed Kirlin $595,058.00 and did not pay Kirlin that money on time.

Kirlin has stated a claim against Clark under the MPPA for the $595,058.00 Clark allegedly conceded it owed Kirlin for change work.

15

## IV. Conclusion

Kirlin's motion for leave to file an amended answer and counterclaim, ECF 121, is granted in part, consistent with this memorandum opinion. A separate order follows.

Date: June 10, 2024

Deborah L. Boardman
United States District Judge