**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA f/u/b/o MCCORVEY SHEET METAL WORKS, L.P., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2789 |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, *et al.*, | * | |
| | * | |
| Third-Party Plaintiffs, | * | |
| v. | * | |
| KDB MECHANICAL LLC f/k/a KIRLIN DESIGN BUILD, LLC, | * | |
| Third-Party Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | * | |
| CLARK CONSTRUCTION GROUP, LLC, | * | |
| Cross-Claimant/Counter Defendant, | * | |
| v. | * | |
| KDB MECHANICAL LLC f/k/a KIRLIN DESIGN BUILD, LLC, | * | |
| Crossclaim Defendant/Counterclaimant. | * | |

**MEMORANDUM OPINION**

In the last round of this Miller Act dispute over a construction project in Maryland, the Court granted the motion of cross-claimant Clark Construction Group, LLC ("Clark") to dismiss the counterclaim of crossclaim defendant Kirlin Design Build, LLC ("Kirlin"), who had asserted Clark breached their subcontract. ECF 101. Kirlin then filed a similar counterclaim against Travelers Casualty and Surety Company of America, Federal Insurance Company, Federal and Deposit Company of Maryland, Zurich American Insurance Company and Travelers Casualty and Surety Company ("the sureties") pursuant to the Miller Act, 41 U.S.C. § 3131 *et seq.* ECF 108. Now, the sureties have moved to dismiss Kirlin's counterclaim against them. ECF 141. The motion is fully briefed. ECF 141-1, 154, 157. No hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court grants in part and denies in part the sureties' motion to dismiss Kirlin's counterclaim against them.

I.     **Background**

In 2016, the United States contracted with Clark for the design and construction of a building at Ft. Meade in Maryland: ECB2. ECF 108, ¶ 10. The Miller Act required Clark, as the prime contractor on a federal project of this scale, to execute a payment bond to the United States to guarantee that the subcontractors and suppliers would get paid. ECF 43, ¶¶ 8, 9. To that end, Clark executed a payment bond for $616,311,000 with the sureties. *Id.* ¶ 8.

Later that year, Clark executed a first-tier subcontract with Kirlin Mid-Atlantic, LLC for the design and installation of the project's mechanical, plumbing, and fire protection systems. ECF 108, ¶ 13. Kirlin Mid-Atlantic then assigned the subcontract to Kirlin. *Id.* ¶ 14. On January 1, 2018, Kirlin executed a second-tier subcontract with McCorvey Sheet Metal Works, L.P. ("McCorvey") for the fabrication and installation of the mechanical ductwork. ECF 43, ¶ 16.

A few years later—with the project running behind schedule and over-budget—McCorvey filed this Miller Act suit against the sureties, seeking compensation for a variety of increased costs for which McCorvey allegedly has not been paid. *Id.* ¶ 36. In response, the sureties filed a third-party complaint against Kirlin, asserting that Kirlin had agreed to indemnify them against McCorvey's claims. ECF 23 (original) & 45 (amended). McCorvey, in turn, amended its complaint to name Clark as an additional defendant. ECF 43. Clark then filed crossclaims against Kirlin, alleging that Kirlin had agreed to indemnify Clark, too, and blaming Kirlin for the project's woes. ECF 65.

Closing the loop, Kirlin moved to dismiss Clark's crossclaims and filed a counterclaim against Clark for breach of contract. ECF 83. Clark moved to dismiss Kirlin's counterclaim. ECF 86. The Court denied Kirlin's motion to dismiss Clark's crossclaims and granted Clark's motion to dismiss Kirlin's counterclaim without prejudice. ECF 101. Since then, Kirlin has moved for leave to file an amended answer and counterclaim against Clark for breach of contract. ECF 121.

On January 10, 2024, Kirlin filed a counterclaim against the sureties under the Miller Act on the basis of similar factual allegations as its counterclaim against Clark. ECF 108. The sureties moved to dismiss. ECF 141. Kirlin opposed the motion. ECF 154. The sureties replied. ECF 154.

Several provisions of the subcontract between Clark and Kirlin that were relevant to Clark's motion to dismiss Kirlin's original counterclaim against Clark are relevant here too. Presenting them in the order in which they appear in the subcontract, the first is § 4(j):

> At any time all monies due Clark from the Owner[1] are not paid because of Owner withholding, Clark will, in its sole discretion, apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. However, if the withholdings are identified by the Owner as due to the undisputed fault of Clark or other subcontractors and not involving Subcontractor, then Clark shall pay Subcontractor amounts otherwise due hereunder. Subcontractor agrees that it relies

---

[1] Throughout the subcontract, "Owner" refers to the United States. ECF 108-2, at 3.

for payment for all work performed pursuant to this Subcontract on the credit and ability to pay of the Owner, and not that of Clark, and Subcontractor agrees that payment by the Owner to Clark for work performed by the Subcontractor or its lower-tier subcontractors is a condition precedent to any payment obligation of Clark to Subcontractor. Subcontractor agrees that the liability of Clark's sureties on any bond for payment to Subcontractor is subject to the same conditions precedent as are applicable to Clark's liability to Subcontractor. The conditions precedent described in this paragraph shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers.

ECF 108-2, at 4 § 4(j), 46–48 (amendments). The second is § 8(a):

Subcontractor will proceed with the work in a prompt and diligent manner, in accordance with Clark's schedules as reasonably amended from time to time. Subcontractor shall be liable to Clark for failure to adhere to Clark's schedules including amendments even if such schedules differ from schedules set forth in the Contract Documents or the time of completion called for by the Contract Documents.

*Id.* at 5 § 8(a), 46–48 (amendments). The third is § 8(d):

Subcontractor shall be entitled to additional compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages from the Owner or other third parties or to a contract adjustment increasing the price or Guaranteed Maximum Cost of the contract between Clark and Owner.

*Id.* at 5 § 8(d), 46–48 (amendments). The fourth is § 9(b):

Subcontractor shall submit to Clark any requests or claims for adjustment in the price, schedule or other provisions of the Subcontract for changes directed by the Owner, as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents. Said requests or claims shall be submitted in writing by Subcontractor in time to allow Clark to comply with the applicable provisions of the Contract Documents.

*Id.* at 5 § 9(b), 46–48 (amendments). The fifth is § 9(c):

Clark's receipt of payment from the Owner on account of pending changes made by the Owner shall be a condition precedent to Clark's obligation to make payment for changed work to Subcontractor. This condition precedent shall not apply if the Owner's non-payment is due to the undisputed fault of Clark or its other subcontractors or suppliers. Each payment to Subcontractor on account of pending change orders shall be equal to Subcontractor's allocable share of Clark's payment from the Owner for the pending change as reasonably determined by Clark. Amounts paid on account of pending changes are provisional and not an admission

of liability and shall be repaid to Clark on demand whenever Clark determines there has been an overpayment.

*Id.* at 5 § 9(c), 46–48 (amendments). The sixth is § 9(d):

> For changes ordered by Clark independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract price. If Subcontractor considers any action or inaction by Clark other than a formal change order to be a change, it shall so notify Clark within thirty (30) days of said action or inaction and seek a confirmation from Clark. Failure to comply with said confirmation procedure shall constitute a waiver of the right to compensation for the action or inaction.

*Id.* at 5 § 9(d), 46–48 (amendments).

Three paragraphs from the design-assist component of the contract are also important for the resolution of this dispute. Paragraph 4 states, in relevant part: "Subcontractor covenants that it shall not seek, and shall not be entitled to, an increase in the cost or time of performance unless the work is expressly changed by the Owner or Clark, from the requirements of the Contract Documents." *Id.* at 30 ¶ 4. Paragraphs 10 and 11 provide additional detail on the requirements for compensable changes:

> Subcontractor shall, at all times through the course of the development of the Construction Drawings and Specifications, advise Clark immediately of any and all Scope Changes, both additions and deletions or items that would increase or decrease the scope of work contemplated by the Subcontractor as of the date of this Subcontract (to the extent such changes are Scope Changes as defined herein). Subcontractor shall notify Clark in writing within five (5) days after Subcontractor determines that the Architect's evolving design will have a cost impact on the Subcontract amount. Subcontractor shall be solely liable for failure to provide timely notice and documentation so that delay and cost impacts are avoided.

> It is agreed and understood that no adjustment of the Subcontract price shall occur except to the extent there is an agreed upon Scope Change. A "Scope Change" shall mean work (i) not included in the final Construction Drawings and Specifications (ii) which was not inferable by a subcontractor possessing a high level of skill, experience and expertise as the Subcontractor as necessary for the proper completion of the work based upon any preliminary Construction Drawings and Specifications, Contract Documents, materials and information furnished to the Subcontractor during the development of the Construction Drawings and

5

Specifications (iii) constitutes a material change in the RFP requirements and/or documents.

*Id.* at 31 ¶¶ 10–11.

## II.       Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to include in their complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of that statement. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6). A court will deny a Rule 12(b)(6) motion if, but only if, the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on the motion, a court accepts the well-pleaded allegations as true, *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021), but "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses," *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). A complaint that merely recites the elements of the cause of action or couches legal conclusions as facts cannot overcome a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Turner*, 930 F.3d at 644. In resolving a Rule 12(b)(6) motion, a court may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c).

## III.      Discussion

The Miller Act authorizes any subcontractor who supplies labor or materials for a federal building project to sue the contractor's sureties on the payment bond to recover any amount due under the contract. *See United States ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th

Cir. 1967); *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 832 (D. Md. 2016). Generally, "[f]ederal law, not state statute or common law principles, controls in Miller Act suits." *United States ex rel. Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 756, n. 13 (D. Md. 2016). However, when a Miller Act case presents an ordinary question of contract law—like whether one party breached a contract—the court must answer that question according to the law of the state where "the predominant acts relevant to the [contract] and its performance occurred." *See United States v. Turner Constr. Co.*, 946 F.3d 201, 205 n.2 (4th Cir. 2019) (citing *United States ex rel. Shields, Inc. v. Citizens & S. Nat'l Bank*, 367 F.2d 473, 477 (4th Cir. 1966)). This case concerns a project in Maryland. So Maryland law applies to the question of whether Clark breached the subcontract with Kirlin. Otherwise, federal law applies.

Under Maryland law, "a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977)). Any ambiguity in the complaint must be construed against the pleader. *Id.*

Kirlin's counterclaim against the sureties levels the same substantive claims against them that Kirlin's counterclaim against Clark levels against Clark: that Clark failed to compensate Kirlin properly for delays, base contract work, and change work. The sureties respond that the counterclaim against them is untimely and in any event fails for the same reasons as Kirlin's initial counterclaim against Clark: that Kirlin fails to plausibly allege that Clark had a duty to make the payments Kirlin demands.[2] But the sureties have not established that Kirlin's counterclaim is

---

[2] The sureties incorporate by reference Clark's arguments for the futility of Kirlin's proposed amended counterclaim. *See* ECF 141, at 18 n.6.

untimely—at least not in this motion to dismiss posture. And although Kirlin has not stated a Miller Act claim for the delays or the change work, Kirlin has stated a claim for the base contract work.

### A.  Statute of Limitations

At the outset, the sureties argue that Kirlin's counterclaim is barred by the statute of limitations. The Court may grant the sureties' motion to dismiss on statute of limitations grounds only if it is apparent from the face of Kirlin's counterclaim that Kirlin's claim is untimely. A Rule 12(b)(6) motion to dismiss "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A court may grant a motion to dismiss on the basis of an affirmative defense like the statute of limitations only in the rare case that "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (cleaned up). "[T]he burden of establishing the affirmative defense rests on the defendant." *Id.*

A Miller Act claim like Kirlin's must be filed no later than one year after the claimant last performed labor or supplied materials for the project. *United States ex rel. Dickson v. Fid. & Deposit Co.*, 67 F.4th 182, 191 (4th Cir. 2023) (quoting 40 U.S.C. § 3133(b)(4)). What matters is when the claimant made its last contribution to the original contract work, not when the claimant last contributed to corrections or repairs. *See United States ex rel. Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir. 1983). Kirlin filed this counterclaim on January 10, 2024. The sureties claim that the counterclaim indicates that Kirlin last performed base contract work on ECB2 in November 2022—over a year earlier.

The sureties have not established that Kirlin's counterclaim is untimely. The sureties are correct that Kirlin does not specifically allege that it performed base contract work after November 2022. And the sureties are correct that Kirlin alleges requesting payment from Clark for base

contract work in November 2022 but does not allege requesting payment from Clark for base contract work any later than that. However, Kirlin's failure to allege that it performed base contract work after November 2022 does not, by itself, establish that Kirlin did not perform any base contract work after November 2022. The dispositive fact the sureties need to establish—that Kirlin performed no base contract work within a year of filing the counterclaim—is not clearly apparent from the face of Kirlin's counterclaim.[3]

Because it is not clear from the face of Kirlin's counterclaim when Kirlin last performed base contract work on ECB2, the sureties have not borne their burden of establishing that Kirlin's counterclaim is untimely.

### B.  Damages for Delay

Turning to the merits, Kirlin first seeks compensation from the sureties for the costs the subcontractor allegedly incurred as a result of Clark's amendments to the schedule and other delays. Like Clark, the sureties contend that the subcontract contains a "no damages for delay" clause, pursuant to which Clark had no obligation to compensate Kirlin for these costs. A no damages for delay clause limits one party's obligation to compensate the other for delay-related expenses. *See United States v. John C. Grimberg Co.*, 283 F. Supp. 3d 476, 479 (E.D. Va. 2017). Kirlin responds that a surety may not enforce a contractor's no damages for delay clause against a Miller Act claimant.

The Court finds that the sureties may enforce this no damages for delay clause against Kirlin in this Miller Act counterclaim. And the Court also finds that Kirlin has failed to plausibly allege Clark had a duty to pay Kirlin the money Kirlin seeks.

---

[3] Because the Court finds that the sureties have not established that Kirlin's counterclaim is untimely, the Court need not and does not decide whether Kirlin's counterclaim relates back to the sureties' third-party complaint against Kirlin.

### 1.   The Enforceability of the No Damages for Delay Clause

No damages for delay clauses generally are enforceable under Maryland law. *See State Hwy. Admin. v. Greiner Eng'g Scis., Inc.*, 577 A.2d 363, 373 (Md. App. Ct. 1990).[4] However, whether they are enforceable under the Miller Act poses a question of federal law. *See Tusco*, 235 F. Supp. 3d at 756 n.13 (citing *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 127 (1974)). The Fourth Circuit has never answered this question, *cf. United States v. Turner Constr. Co.*, 946 F.3d 201, 210 (4th Cir. 2019), and courts in this district are divided, *see United States ex rel. Manganaro Midatlantic LLC v. Grimberg/Amatea JV*, No. PX-16-2816, 2018 WL 3818876, at *2 n.1 (D. Md. Aug. 10, 2018) (collecting cases). The Court finds that this particular no damages for delay clause is enforceable here.

Begin with the basics. Generally, the liability of a surety is coextensive with the liability of the surety's principal. *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1302 (4th Cir. 1979); *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 468 (Md. 2004). And generally, this rule applies to Miller Act claims. *Consol. Elec. & Mechanicals, Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 435 (8th Cir. 1999) ("A surety's liability under the Miller Act is measured by the general contractor's liability under the construction contract."). However, the Supreme Court has held that a "surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act." *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 215–16 (1957). In consequence, "a surety can only enforce contract terms

---

[4] Kirlin argues that this no damages for delay clause is unenforceable under Maryland law because it is actually a conditional payment clause. A conditional payment clause is a clause that "condition[s] payment by the prime contractor to the subcontractor on receipt of payment to the prime contractor by the owner." *See Tusco*, 235 F. Supp. 3d at 756. The no damages for delay clause at issue here is not a conditional payment clause because it does not make payment to Kirlin by Clark depend on receipt of payment from the United States by Clark.

to limit its Miller Act liability if those terms are consistent with the Act." *Grimberg Co.*, 283 F. Supp. 3d at 481 (citing *U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1206–08 (9th Cir. 2002)).

Against that backdrop, some courts have held that the Miller Act bars a surety from enforcing a no damages for delay clause that conditions when and whether a subcontractor may recover for delays on when and whether the United States pays the contractor for those delays. In *United States v. John C. Grimberg Co.*, for example, a court held unenforceable under the statute a clause providing that the subcontractor was not entitled to recover delay-related damages from the contractor unless and until the contractor recovered those same costs from the government. *See* 283 F. Supp. 3d at 479, 482, 484. The clause contravened the Miller Act's text, the court reasoned, because it changed when a Miller Act claim would accrue: The statutory text "provides that a subcontractor's cause of action arises after the passage of time—specifically, 90 days after the subcontractor provides the last labor or materials for which the claim is made," but this clause postponed the accrual of a claim until payment by the United States. *Id.* at 482. And the clause contravened the Miller Act's purpose—ensuring that "even if the principal does not pay," subcontractors would "receive prompt payment"—because it prevented subcontractors from being paid unless the United States paid the contractor. *Id.* at 483. For these two reasons, the *Grimberg* Court held that the surety defendant could not enforce the clause to impair the subcontractor plaintiff's Miller Act claim. *Id.* at 484.

In *United States v. Continental Casualty Co.*, a court in this district reached the same conclusion on similar grounds. *See* No. ELH-16-3047, 2017 WL 3642957, at *7–15 (D. Md. Aug. 24, 2017). There, too, the clause at issue conditioned the subcontractor's right to compensation for delay and the timing of those payments on when and whether the United States paid the contractor

for the same delays. *See id.* at \*7–8. Following the Ninth Circuit's decision in *United States ex rel. Walton Technology, Inc. v. Weststar Engineering, Inc.*, the *Continental Casualty* Court reasoned:

> A subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, not 'when and if' the prime contractor is paid by the government. Permitting a Miller Act surety to avoid liability on the payment bond based on an unsatisfied 'pay when and if paid' clause in the subcontract would, for all practical purposes, prohibit a subcontractor from exercising its Miller Act rights until the prime contractor has been paid by the government. In cases where the government does not pay the prime contractor within the one year statute of limitations period, the subcontractor would be barred from asserting its Miller Act rights.

*Id.* at \*9 (quoting *Walton Tech.*, 290 F.3d at 1208). So the court held that the surety could not enforce the clause at issue against the subcontractor in a Miller Act action. *Id.* at \*11–12, \*15.

Here is the problem for Kirlin: Even if *Grimberg* and *Continental Casualty* are correct, it would not follow that the no damages for delay clause at issue here is unenforceable under the Miller Act. This clause is different. The clause in the subcontract between Kirlin and Clark entitles Kirlin to "compensation for compliance with schedule amendments or damages for delay only to the extent the Contract Documents entitle Clark to damages from the [United States] or other third parties or to a contract adjustment increasing the price." ECF 83-1, at 4 § 8(d), 45–47 (amendments). That is, the subcontract only imposes a duty on Clark to cover Kirlin's expenses arising from amendments to the schedule or other delays to the extent that the prime contract imposes a duty on the United States or a third party to cover Clark's same costs. Whereas the no damages for delay clauses in *Grimberg* and *Continental Casualty* determined the timing of payment for delay, the clause here does not determine when Kirlin may receive compensation for delays, but rather how much Kirlin may receive: the amount Clark is entitled to recover from the United States. And whereas the clauses in *Grimberg* and in *Continental Casualty* made the subcontractor's right to payment for delay a function of whether and when the United States paid

the contractor, the clause here makes Kirlin's right to payment for delay a function of whether and to what extent the United States had a duty to pay Clark. These details make a legal difference. Following *Walton*, the *Grimberg* and *Continental Casualty* Courts concluded that the no damages for delay clauses before them were unenforceable primarily because they conflicted with the Miller Act's guarantee that subcontractors may sue for payment 90 days after the completion of the work. Because the clause at issue here does not interfere with the Miller Act's timeline at all, it does not present that problem. Those two courts also found that the clauses at issue were unenforceable because they thwarted the Miller Act's purpose: to ensure that subcontractors get paid for their work even if the United States does not pay the contractor. The clause at issue here is compatible with that purpose: Clark (and hence the sureties) must pay Kirlin to the extent Clark is entitled to compensation from the United States—regardless of whether the United States upholds that duty to Clark. In sum, the main two considerations that weighed against the enforceability of the no damages for delay clauses in *Grimberg* and *Continental Casualty*—the Miller Act's timeline and purpose—do not cut against the enforceability of the clause here. There is no authority for Kirlin's argument that the Miller Act bars the sureties from invoking this no damages for delay clause.[5]

Making matters worse for Kirlin, Fourth Circuit precedent cautions against extending *Grimberg* and *Continental Casualty* to the clause at issue here. For decades, the Fourth Circuit has

---

[5] Kirlin also argues that the no damages for delay clause is unenforceable under the Miller Act because it is a conditional payment clause. Federal courts consistently have held that in a Miller Act action, a surety may not enforce a conditional payment clause in the subcontract against the subcontractor. *Tusco*, 235 F. Supp. 3d at 756–57 (collecting cases). Their reasoning has mirrored the reasoning of *Grimberg* and *Continental Casualty*: Conditional payment clauses conflict with the Miller Act's 90-day timeline and jeopardize its aim of securing payment to subcontractors even when the principal fails to pay. As the Court already explained in the previous footnote, the no damages for delay clause at issue here is not a conditional payment clause because it does not make payment to Kirlin by Clark depend on receipt of payment from the United States by Clark. And because this clause does not conflict with the text and purpose of the Miller Act, there is no reason to extend this line of reasoning to cover it.

held that the amount a subcontractor is entitled to recover from a surety on a Miller Act bond "must be determined by reference to the subcontract." *United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976). Following *Woodington*, district courts within the Fourth Circuit and elsewhere have held that the Miller Act does not preclude the enforcement of no damages for delay clauses. *See Chasney & Co. v. Hartford Accident & Indem. Co.*, No. WDQ-14-2148, 2015 WL 3887792, at *2–3 (D. Md. June 22, 2015); *Kogok Corp. v. Travelers Cas. & Sur. Co.*, 55 F. Supp. 3d 852, 860 (N.D. W. Va. 2014); *Morganti Nat'l, Inc. v. Petri Mech. Co.*, No. Civ.A.3:98CV309 (SRU), 2004 WL 1091743, at *11 (D. Conn. May 13, 2004). Today, the Fourth Circuit continues to emphasize the primacy of the subcontract in Miller Act cases, recently observing that "[o]ne of our country's bedrock principles is the freedom of individuals and entities to enter into contracts and rely that their terms will be enforced" and lauding a district court for deciding a Miller Act case "based on the plain language of the Subcontract." *See Turner*, 946 F.3d at 204–05. Here, of course, the subcontract provides that Kirlin may recover for delays only the amount Clark is entitled to recover from the United States. Respect for the subcontract calls for respect for the no damages for delay clause.

Kirlin tries to distinguish *Woodington*, but Kirlin fails. Kirlin points out that in *Walton Technology*, the Ninth Circuit read *Woodington* to concern only clauses governing "the *measure of recovery* in Miller Act cases." *Walton Tech.*, 290 F.3d at 1207. According to the Ninth Circuit, *Woodington* held that where subcontract terms affect how much the subcontractor may recover, the subcontract governs. *Id.* But "[w]here subcontract terms effect [sic] the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict [sic] the express terms of the Miller Act." *Id.* Even if the Ninth Circuit's distinction reflects the right reading of *Woodington*, the no damages for delay clause at issue here

is enforceable. As discussed above, the no damages for delay clause here does not determine "the timing of recovery" at all. *See id.* And as the Court will explain next, this clause determines the measure of recovery, not the right to recovery.

At the outset, the Court notes that *Walton Technology*'s distinction between the right to recovery and the measure of recovery is difficult to parse. It appears that a right to recovery clause concerns whether the subcontractor is entitled to recover what they are owed; a measure of recovery clause concerns what the subcontractor is owed in the first place. *See id.* at 1206–08. But a rule like that only gets a court so far. Consider the clause at hand. On one hand, this no damages for delay clause could be construed as denying Kirlin the right to recover any damages for delay that Clark does not have the right to recover from the United States. On the other hand, this clause could be construed as establishing how much Kirlin is entitled to recover for delay: the amount Clark is entitled to recover from the United States. This clause could even be construed as regulating how much Kirlin is entitled to recover for the entire project: the fixed price set by the contract, plus any amount Clark is entitled to recover from the United States for delay. No wonder, then, that courts in this district have disagreed on how to classify no damages for delay clauses. *Compare Continental Casualty*, 2017 WL 3642957, at *12 (finding no damages for delay clause affected right of recovery), *with Chasney*, 2015 WL 3887792, at *3 (finding no damages for delay clause affected measure of recovery).

That confusion notwithstanding, a case *Walton Technology* cites as an example of a "measure of recovery" clause illustrates that the clause at issue here belongs to that category. *See Walton Tech.*, 290 F.3d at 1207 (citing *Taylor Constr., Inc. v. ABT Serv. Corp.*, 163 F.3d 1119 (9th Cir. 1998)). In *Taylor Construction*, the subcontract provided that the contractor had a duty to pay the subcontractor all material, labor, and equipment costs, plus half of "any savings realized in this

work." 163 F.3d at 1120–21. The surety argued that the subcontractor could not enforce the savings clause under the Miller Act because the statute only entitled subcontractors to recover for the provision of labor and materials, not for savings. *Id.* The Ninth Circuit disagreed. "What is disputed here," the court found, was "what Taylor Construction can recover." *Id.* at 1122. When the question is "what one providing 'labor or materials' can recover," the "method of analysis" is to "look[] to the underlying contract." *Id.* Because the subcontract provided that the contractor had a duty to pay the subcontractor half of any savings realized on the project, the Miller Act not only permitted the enforcement of that clause but required it. *See id.*

On *Taylor*'s terms, this case concerns what Kirlin can recover. Here, as there, the issue is whether the subcontractor is entitled to recover a specific amount, above the contractual baseline, that depends on how the work went: there, a share of savings, and here, the costs of delay. Here, as there, one party argues that the Miller Act permits the enforcement of the clause that governs that additional payment while the other argues the statute does not. So just as the dispute in *Taylor* concerned the measure of recovery, the dispute here concerns the measure of recovery. Accordingly, here, as there, the way to resolve the dispute is to look to the terms of the subcontract. And those terms provide that Kirlin is entitled to damages for delay only to the extent Clark is entitled to them from the United States.

Here is where that leaves the enforceability of the no damages for delay clause: The cases Kirlin cites for the proposition that no damages for delay clauses are unenforceable under the Miller Act do not cover a clause like this one. In any event, the Fourth Circuit has held that the amount a subcontractor may recover on a Miller Act claim "must be determined by reference to the subcontract." *Woodington*, 545 F.2d at 1383. Kirlin, drawing on *Walton Technology*, responded that that principle does not apply here because the no damages for delay clause controls

its right to recover, not the amount it may recover. But Kirlin is incorrect. As *Taylor* illuminates, this no damages for delay clause concerns the amount Kirlin may recover. So Kirlin may recover for the delays at issue only what Clark is entitled to recover from the United States for the delays. The no damages for delay clause in the subcontract between Kirlin and Clark is enforceable in this Miller Act action.

### 2.   Applying the No Damages for Delay Clause

That leaves the issue of whether Kirlin has plausibly alleged that it is owed damages for delay under the subcontract. In its previous opinion, the Court held that Kirlin had failed to allege that Clark breached the subcontract by not compensating Kirlin for delays because Kirlin had not alleged that the prime contact between Clark and the United States entitled Clark to damages from the government or any third party or a contract price adjustment for those delays. *See* ECF 100, at 8. Kirlin's counterclaim against the sureties does nothing to address this defect. Nowhere does Kirlin allege that Clark was entitled under the Contract Documents to recover damages for these delays from the United States or any third party.

Even if the Court were to accept Kirlin's request to consider the allegations in Kirlin's proposed amended counterclaim against Clark here, *see* ECF 154, at 7 n.2, the result would be the same. Kirlin's proposed amended counterclaim against Clark includes an allegation that Clark was entitled to recover from the United States or third parties for the delays at issue. However, the proposed pleading does not include an allegation that Clark was entitled to recover under the "Contract Documents"—the prime contract between Clark and the United States and some associated documents. *See* ECF 83-1, at 10–11; *see also* ECF 142, at 9 n.4. For that reason, Kirlin has not plausibly alleged that Clark had any duty to pay the subcontractor for the delays.

Accordingly, Kirlin fails to state a Miller Act claim for its delay-related costs.

### C.  Base Contract Work

Kirlin also predicates its Miller Act claim on the claim that Clark breached the subcontract by failing to pay the subcontractor $2,187,028.00 for base contract work. In assessing Kirlin's original counterclaim against Clark, the Court held that Kirlin had failed to state a claim for breach of contract concerning the base contract work because Kirlin had failed to allege that it met the subcontract's requirement that Kirlin submit a written request for each partial payment and accompany that request with "claim releases and lien waivers with respect to all work performed and materials supplied through the date of the immediately preceding request for partial payment." *See* ECF 100, at 11–12 (quoting ECF 83-1, at 6, 107–11).

Kirlin's counterclaim against the sureties includes this allegation: "Since November 2021, Clark has not made a single payment to KDB [Kirlin] despite KDB's timely submission of Payment Applications, completion of work, and satisfaction of all conditions precedent for payment." ECF 108, ¶ 19. To supplement that allegation, Kirlin identifies the month and value of eight specific requests for partial payment it alleges it submitted to Clark that allegedly remain unpaid. *Id.* ¶¶ 20–27.

The sureties contend that Kirlin has not plausibly alleged that Clark had a duty to pay Kirlin the disputed funds because the allegations just mentioned are conclusory—pointing out that Kirlin does not specifically allege that it accompanied each request for partial payment with the required claim releases and lien waivers. However, at the motion to dismiss stage, Kirlin's general allegation that it satisfied all conditions precedent for payment for base contract work, buttressed by its allegations of eight specific partial payment requests, suffices. *See United States ex rel. Aarow/IET LLC v. Hartford Fire Ins. Co.*, 838 Fed. App'x 736, 744 (4th Cir. 2020) (citing Fed. R. Civ. P. 9(c)); *Tusco*, 235 F. Supp. 3d at 753.

Because the sureties have incorporated Clark's arguments by reference, the Court also addresses Clark's argument that Kirlin was not entitled to the money at issue because the subcontract permitted Clark to withhold "amounts otherwise due . . . to cover Clark's reasonable estimate of any costs or liability Clark has incurred or may incur for which [Kirlin] may be responsible." ECF 142, at 22 (citing ECF 83-1, at 3 § 4(g)). At this stage of the proceedings, Kirlin need not anticipate and negate that defense. *See Goodman*, 494 F.3d at 464–66. To state a claim for breach of contract, all Kirlin must do is plausibly allege that Clark had a duty to pay and breached it. *See RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010) ("[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant.") (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). Kirlin has alleged that it satisfied the contractual requirements that would obligate Clark to pay for the base contract work and that Clark did not pay $2,187,028.00 it owed Kirlin for that work. The sureties may later wish to defend against Kirlin's claim by arguing that Clark withheld this "amount[] otherwise due" in order to cover liability for which it holds Kirlin responsible. *See* ECF 83-1, at 3 § 4(g). But the facts necessary to sustain that defense are not apparent on the face of the complaint and Kirlin need not plead around that defense now. *See Goodman*, 494 F.3d at 464–66.

Kirlin has pled that Clark breached the subcontract by failing to pay $2,187,028.00 due for base contract work. In so doing, Kirlin has stated a Miller Act claim against the sureties for the unpaid base contract work.

### D.  Change Work

Kirlin also seeks compensation from the sureties on the ground that Clark breached the subcontract by failing to pay the subcontractor $7,668,846.00 for work to comply with change

orders for the project. The subcontract provides that Clark had a duty to pay extra for a change only if the change was outside the scope of work and either Clark formally ordered the change or Kirlin timely notified Clark that it considered the action or inaction at issue a change and sought Clark's confirmation. *See* ECF 108-2, at 5 §§ 9(b), 46–48 (amendments) & 9(d), 46–48 (amendments); *id.* at 30 ¶ 4; *id.* at 31 ¶¶ 10–11. Not every change is a scope change. A change is a scope change if, but only if, the work (i) was not included in the final drawings and specifications, (ii) was not inferable by a sufficiently skilled subcontractor, and (iii) was a material departure from the original requirements. *Id.* at 31 ¶¶ 10–11. Even then, the subcontract provides that "no adjustment of the Subcontract price shall occur except to the extent there is an *agreed upon* Scope Change." *Id.* ¶ 11 (emphasis added). In its previous opinion on Kirlin's original counterclaim against Clark, the Court determined that Kirlin did not allege that the changes for which it sought relief satisfied these requirements. Kirlin never clearly alleged that *any* change for which it sought payment met both the scope of work criterion and either the formal order criterion or the notice and confirmation criterion—let alone every change.

Kirlin's counterclaim against the sureties has a similar defect. Kirlin alleges that it "submitted its [change] proposals timely and in accordance with the requirements of the Contract Documents." ECF 108, ¶ 35. However, Kirlin has failed to allege that any of the changes at issue were mutually recognized scope changes. In fact, Kirlin specifically alleges that when Kirlin sent its log of proposed change work to Clark, Clark rejected all of the changes. *Id.* ¶ 36. For this reason, Kirlin has not plausibly alleged that Clark had a duty to pay for the change work at issue.[6]

---

[6] In its opposition, Kirlin claims that the first material breach rule excuses Kirlin from its obligation to fulfill the contractual conditions for payment after Clark breached the contract by failing to pay Kirlin in November 2021. *See* ECF 154, at 19–20 (citing *Final Analysis Commc'n Servs., Inc. v. Gen. Dynamics Corp.*, 253 Fed. App'x 307, 313 (4th Cir. 2007)). The first material breach rule provides that "a material breach by one party to a contract excuses the other party from

Accordingly, Kirlin still has not pled that Clark breached the subcontract by failing to compensate Kirlin for the change work. Because Kirlin has not pled that Clark owes Kirlin for the change work, Kirlin has not stated a Miller Act claim against the sureties for the change work.

## IV.    Conclusion

The sureties' motion to dismiss Kirlin's counterclaim against them, ECF 141, is granted in part and denied in part. The claims for damages for delay and change work are dismissed. The claim for base contract work survives. A separate order follows.


Date: June 10, 2024

Deborah L. Boardman
United States District Judge

---

performance." *Final Analysis*, 253 Fed. App'x at 313 (citing *Rogers Refrigeration Co., Inc. v. Pulliam's Garage, Inc.*, 505 A.2d 878, 883 (Md. App. Ct. 1986)). That means that when one party breaches, the other "may follow either of two alternative courses of action . . . : (1) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission." *Lazorcak v. Feuerstein*, 327 A.2d 477, 480 (Md. 1974). It does not mean that when one party breaches the contract, the other may demand payment for post-breach work without meeting the contractual conditions for payment. Kirlin's first material breach rule argument is meritless.